## Samuel Abrams, Appellee, v. M. A. Love et al., Appellants.

### Gen. No. 7,979.

Opinion filed October 1, 1929.

NORTH, LINSCOTT, GIBBONEY & NORTH, CLARENCE DAR-ROW and WILLIAM H. HOLLY, for appellants.

HALL & DUSHER, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.
In 1925, Samuel Abrams, appellee, filed a bill in the circuit court of Winnebago county, against M. A. Love, Frank O. Howe, Henry P. Lewis, M. F. Ambrosious, N. E. Simonsen, John E. Stephens and C. F. Buman, alleging that one M. F. Ambrosious sold to him twenty-five shares of the capital stock of the Winnebago Pro-duction Company, or corporation, for $250; that there-after he sold to appellee fifteen shares of the capital stock of the Rock River Development Corporation for $150; that said corporations were organized for the purpose of producing oil and that the stock of said corporations came within class "D" of Illinois Secu-rities Law, Cahill's St. ch. 32, ¶ 254 *et seq.*; that said corporations did not comply with said law, that M. A. Love and N. E. Simonsen, the appellants herein, were officers and directors of the American Engineering and Development Company, a corporation organized for the purpose of selling stock and drilling for oil and the producing and selling of oil and that said corpora-

tion and its officers caused and assisted in the organization of the said Winnebago Production Company and said Rock River Development Corporation and that said last mentioned corporations were organized in behalf of the officers of said American Engineering and Development Company and as subsidiary corporations, with the knowledge and consent of Love and Simonsen, appellants, and with the consent of others who did not join in the appeal of this cause for the purpose of selling the stock of said Winnebago Production Company and of the Rock River Development Corporation and turning over the money received from such sales to said American Engineering and Development Company; that a large proportion of the money received from the sales of the stock of said Winnebago Production Company and the said Rock River Development Corporations was turned over to the said American Engineering and Development Company; that appellants, Love and Simonsen, and others who did not enter into this appeal, assisted in selling the stock of said corporations to appellee and that the same was sold to appellee with their knowledge and consent and for the benefit of said American Engineering and Development Company.

Separate answers were filed by M. A. Love and N. E. Simonsen, appellants, in which they neither admitted nor denied the allegations to the effect that the shares of stock sold to appellee came within class "D" of the Illinois Securities Law, Cahill's St. ch. 32, ¶ 254 *et seq.* Said appellants each denied that they had anything to do with the selling of said above mentioned stock to appellee or that the American Engineering and Development Company received the proceeds of the sale of shares of stock of the Winnebago Production Company and the Rock River Development Corporation, but charged, whatever funds they received from said last mentioned corporations they received

the same in payment for services rendered by the American Engineering and Development Company for said Winnebago and Rock River Corporations and for oil leases sold by said American Engineering and Development Company to said Winnebago Production Company and of the Rock River Development Corporations.

A trial was had with the finding and decree in favor of appellee in which decree the court found among other things, that appellants, Love and Simonsen, with others, knew of the organization of the Winnebago Production Company and Rock River Development Corporation and that said corporations were organized to further the business of the American Engineering and Development Company, and that each of said appellants are jointly and severally liable for the amount paid by appellee on said stock and for the amount of solicitor's fees.

The record discloses, it was agreed that if appellee was entitled to solicitor's fees that $200 was a reasonable fee.

The court also found from the evidence that the American Engineering and Development Company was a corporation organized for the purpose of developing and promoting oil lands and leases in the State of Kentucky and that appellants, Love and Simonsen were each directors of said corporation and became such prior to the first purchase of stock by appellee and remained such directors during all the time that he was purchasing and paying for said stock; that appellant Love was president of said corporation at the time of the purchasing of said stock and remained so during all the time appellee was paying for the same; and that appellant Simonsen was vice president of said corporation at the time appellee purchased his stock and so remained during all the time appellee was paying for the same; that Winnebago Production

Company was a corporation organized for, and on behalf of, and used by American Engineering and Development Company as a subsidiary company; that Rock River Development Corporation was also organized and used by American Engineering and Development Company as a subsidiary corporation; that there was an understanding between such corporations that Winnebago Production Company and Rock River Development Corporation would cause their stock to be sold and send the money therefor to the American Engineering and Development Company and in the sales of the stock, appellants knew that sales were being made of stock and that the same were being made for, and on behalf of, American Engineering and Development Company.

It is urged by appellants that the stock in question did not come under class "D" of the Illinois Securities Law, Cahill's St. ch. 32, ¶ 254 *et seq.* Appellants further contend that the burden was on appellee to prove the facts which would bring said stock under class "D."

Section 3 of the Securities Act, Cahill's St. ch. 32, ¶ 256, classifies securities into four general divisions, and are as follows:

"(1) Securities, the inherent quality of which assure their sale and disposition without the perpetration of fraud, which shall be known as securities in Class 'A';

"(2) Securities, the inherent qualities of which, or in the nature of one or both parties to the sale thereof, assure their sale and disposition without the perpetration of fraud, which shall be known as securities in Class 'B';

"(3) Securities based on established income, which shall be known as securities in Class 'C';

"(4) Securities based on prospective income, which shall be known as securities in Class 'D'."

All securities other than those falling within classes "A," "B" and "C" respectively, shall be known as

securities in class "D." The only way therefore, to determine that a stock is in class "D" is to eliminate classes "A," "B" and "C."

The charter of the Rock River Development Corporation was offered in evidence. It bears date November 8, 1920. It shows that the corporation had been organized for less than a year at the time of the sale of the stock in question; it was fraudulently organized in that the incorporators swore in their statement that they had paid in large sums of money in cash, when in fact, according to the evidence in the case, they had not paid anything.

The corporation pretended to execute a contract with American Engineering and Development Company at a time when appellants, Love and Simonsen, were stockholders and took an active part. The said contract provided for the payment of a large sum of money for something of which none of the directors of the purchasing corporation knew anything; they had not seen it; they did not even know what it was; the directors themselves even denied having made the contract; that is, they had no recollection of the making of the contract. Notwithstanding, it involved over $40,000—by a corporation into whose treasury nothing had been paid.

It is quite apparent that the stock of a corporation, such as the Rock River Development Corporation was nothing but a speculation stock. The evidence fails to disclose that said stock has a single element that entitled it to be considered in the class of securities known as "A", "B" and "C".

The testimony further shows that the Winnebago Production Corporation was a like kind and had for its object like purposes, and according to the testimony, was organized for the purpose of selling its stock, turning the money into the American Engineering and Development Company for the latter's use and in fact, that was what was done with the money.

From an examination of the evidence we find that neither the Winnebago Production Company nor the Rock River Development Corporation were qualified to sell stock under the laws of the State of Illinois and particularly under the Illinois Securities Law, Cahill's St. ch. 32, ¶ 254 *et seq.*, and that neither of said corporations have complied with the law relating to the sale of securities; that the stock of Rock River Development Corporation and the stock of the Winnebago Production Company were each stocks that came within the provisions of the Illinois Securities Law, Cahill's St. ch. 32, ¶ 254 *et seq.*, and belong to class "D."

It also appears that the American Engineering and Development Company was a corporation organized for the purpose of developing and promoting oil lands and leases in the State of Kentucky; that the Winnebago Production Company was a corporation organized for and on behalf of and used by the American Engineering and Development Company as a subsidiary company; that the Rock River Development Corporation was also organized and used by the American Engineering and Development Company as a subsidiary corporation.

The appellants by their answer neither admitted nor denied that the securities came within class "D."

It is quite evident that had they fallen within any classes other than "D," it would have appeared in their answer. The decree recites that the court found that the appellants admitted in open court that the stocks were within class "D."

Since there is nothing to show that the securities belong to either class "A", "B" or "C", there is no other place for them to lodge, except as class "D" securities.

Furthermore, nothing is offered on the part of appellants that tends to show that they belong to any other class than class "D."

It is argued by the appellants that there is no evi-

dence that the stock did not appear in the list of securities dealt in on the New York, Chicago, Boston, Baltimore, Philadelphia, Pittsburg, Cleveland or Detroit Stock Exchange, or did not appear in Moody's or Poor's Manual.

In *Abhau v. Grassie*, 262 Ill. 636, at page 638, the court said: ''The general rule is that the burden of proof rests upon the one who substantially asserts the affirmative of the issue,—that is, upon the party who would be defeated if no evidence at all were offered. (*Stephens v. St. Louis Union Trust Co.*, 260 Ill. 364; 1 Greenleaf on Evidence, 16th Ed., sec. 74). The burden of proof does not depend upon the form of the proposition. The weight of authority is, that whoever asserts a claim or defense which depends upon a negative must establish the truth of the allegation (Jones on Evidence, 2d Ed., sec. 179), for that particular fact is essential to his case.''

In *Trakas v. Cokins*, 224 Ill. App. 327–330, the court said: ''We readily assent to the principles announced in the above quotation. The purpose of the legislature in enacting the statutes in question appears to have been to prevent fraud in the sale and disposition of certain kinds of stocks, bonds, or other securities, and to effectuate this purpose the legislature saw fit to provide a remedy to one injured by infractions of the act. The evident intent of the legislature was to protect purchasers of corporation securities by providing in the act for the doing of certain things by sellers of or dealers in such stocks or securities. The act provides that a purchaser of such stock or securities may have a remedy where it is shown that the sales were made without a license, as provided by the act, of stocks or securities not exempted thereunder.

''Proof of the negative facts that the securities were not listed in a standard manual approved by the Secretary of the State, or that the current price of the stock sold had not been published in the market reports

of a daily newspaper or had not been listed upon any organized stock exchange in the United States were facts which in their nature could not have been shown by the plaintiff. These facts rested peculiarly within the knowledge of the defendant and the law in such circumstances very wisely, and as an exception to the general rule, placed the burden of proving them upon the defendant."

In *Anderson v. Irwin,* 101 Ill. 411, the Supreme Court said: "The law is intended to be practical in its application to the varied transactions and circumstances which go to make up the affairs of life, and which are constantly giving rise to legal controversies that have to be settled in courts of justice. Indeed, most of the rules of evidence have been established with direct reference to this principle."

In the case of *Prentice v. Crane,* 234 Ill. 302, 310, the Supreme Court held: "The rule of the common law as laid down by Greenleaf and approved by numerous decisions of this court is, that where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. This rule is applied to both civil and criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons except those who are duly licensed therefor, as for selling liquors, exercising a trade or profession, or the like. Here the party, if licensed, can immediately show it without the least inconvenience, whereas if proof of the negative were required the inconvenience would be very great. (1 Greenleaf on Evidence, sec. 79; *Harbaugh v. City of Monmouth,* 74 Ill. 367; *Weber v. Christen,* 121 Ill. 91.)."

To place the burden upon the plaintiff of proving that the stock in question was not exempted under the act would have the effect of destroying the beneficial purpose intended by the legislature when it enacted the statute.

Furthermore, the offense lies in selling ''Class D'' securities without full compliance with the securities law. If there has not been a compliance with the law, appellants in error are guilty of violating the law. *People v. Love,* 310 Ill. 558–567.

Clause (1) of section 37 of the Securities Act, Cahill's St. ch. 32, ¶ 290, provides: ''Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court, of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery.''

Clause (2) reads as follows: ''In any action civil or criminal where the seller or issuer, relies for his defense upon any of the exemptions provided for in this Act, the burden of proof to establish such exemption shall be upon such issuer or seller.''

Clause (4) of said section 37 of the Securities Act, Cahill's St. ch. 32, ¶ 290, also reads as follows: ''For the purposes of this Act all persons, solicitors, agents, brokers, officers and directors of the seller, who shall sell or offer for sale, securities in violation of the provisions of this Act, or who shall in any manner authorize, aid or assist in any unlawful sale or offering for sale, shall be deemed equally guilty, and may be tried and punished in the county in which said unlawful sale or offering for sale was made, or in the county in which the securities so sold or offered for sale, were delivered or proposed to be delivered to the purchaser thereof.''

It is insisted that the record fails to show that the

appellants are brought within the terms of section 37 of Illinois Securities Law, Cahill's St. ch. 32, ¶ 290.

The appellants fail to distinguish between the "issuer" of stock and one who may be the seller of that same stock. It is not necessary that the "seller" be the "issuer" or that the "issuer" be the "seller."

In view of the state of the record, we have reached the conclusion (1) that the American Engineering and Development Company sponsored the organization of the Rock River Development Corporation and the Winnebago Production Corporation; (2) that the American Engineering and Development Corporation was developing for the Rock River Development Corporation and the Winnebago Production Corporation and knew they could pay for such developing only out of money derived from the sale of their stock; (3) that in order to facilitate the sale of stock of the Rock River Development Corporation and Winnebago Production Company, the American Engineering and Development Company paid to soliciting agents 20 per cent commissions for selling the securities or stock.

This relation sustained by the American Engineering and Development Company to the Rock River Development Corporation and the Winnebago Production Corporation constituted the American Engineering and Development Company a seller of the Rock River and Winnebago stock within the meaning of that word as used in the statute.

It also appears from the evidence (1) that Love was president and Simonsen was vice president of the American Engineering and Development Company while the stock in the Rock River and Winnebago Companies was being sold and at the time appellee purchased his stock therein; (2) that they each did and said things calculated to induce prospective buyers to purchase the Rock River and Winnebago stocks and to encourage and assist the solicitors in making sales thereof. It follows, appellants thus constituted them-

selves agents of or for the seller and brought themselves within the class of persons designated in the statute as liable to the purchaser.

To agree with the contention of appellants that because it does not appear that either Love or Simonsen took part in making the particular sales involved in this suit and because they both denied they had any knowledge of the sales to appellee, they cannot be held liable to the purchaser, is in effect, to hold that they might be liable criminally for knowingly performing some act or in some way furthering sales generally but could escape civil liability as to any resulting sale they did not specifically further or know about. A rather anomalous result. It would seem more consonant with reason to hold that when one knowingly performs acts and in some way furthers sales generally, he shall be liable to any purchaser the same as if what he did to further sales generally had been directed to the consummation of each sale that results whether he had knowledge of the effort of a solicitor to make that particular sale or not.

As we view this record there is no merit in the contention of the appellants. They are liable to the appellee for the sum he paid for the stock purchased as charged in the bill of complaint, together with solicitor's fees in the circuit court which it was stipulated if he is entitled to fees at all, $200 would be a reasonable fee.

We conclude therefore, that the judgment of the circuit court of Winnebago county should be affirmed which is accordingly done.

The record discloses that a motion has been made and is now pending in the circuit court to fix the fees for solicitors for appellee for the trial of the cause in this court. We make no order in this court relative to the question of fees to which appellant may be entitled for representing appellee in this court.

*Judgment affirmed.*