(No. 21558.—)

MATIE L. MORAN, Appellant, *vs.* THE UNION BANK OF CHICAGO, Appellee.

*Opinion filed April 22, 1933—Rehearing denied June 7, 1933.*

Maximilian J. St. George, (Herbert Bebb, of counsel,) for appellant.

Kirkland, Fleming, Green & Martin, (Robert N. Golding, and Schuyler, Weinfeld & Hennessy, of counsel,) for appellee.

Mr. Justice DeYoung delivered the opinion of the court:

Matie L. Moran brought an action of the first class in the municipal court of Chicago against G. Frank Croissant and the Union Bank of Chicago, a corporation, for money had and received. The bank's amended affidavit of merits was followed by the plaintiff's rejoinder. The suit was dismissed as to Croissant. The plaintiff recovered judgment against the bank for $1245 and costs. The bank prosecuted an appeal to the Appellate Court for the First District, and that court reversed the judgment. Upon petition, the Appellate Court, after certifying the grounds therefor, allowed a further appeal to this court.

G. Frank Croissant was engaged in the purchase, subdivision, development and sale of real estate in different parts of the United States and had his principal office in Chicago. Harry M. Phelps, Fred G. Morphett and Ralph F. Hartenstein were three of Croissant's employees and in August, 1925, obtained from Robert S. Boyland, at the cost of $100,000, four options to purchase certain parcels of land situated in Palm Beach county, Florida. These options were assigned to Frank K. Reilly, one of Croissant's associates, and Reilly, exercising the rights to purchase thus acquired, entered into four contracts with Boyland, dated October 20, 1925. By these contracts Boyland agreed to convey the real estate described in the several options upon the payment of $2,993,250. The receipt of $673,312.50, a portion of the purchase price was acknowledged and the remainder of $2,319,937.50 was made payable in three equal

installments maturing on or before the 22d day of August in the years 1926, 1927 and 1928. The deferred installments were evidenced by Reilly's notes. Deeds of conveyance pursuant to the contracts were executed by Boyland and on October 22, 1925, were deposited with the Palm Beach Bank and Trust Company, of West Palm Beach, Florida, with instructions to deliver them to the grantee upon the receipt of satisfactory proof that the notes representing the deferred installments of the purchase price had been paid.

In October, 1925, Croissant was engaged in organizing a syndicate for the development and sale of the parcels of land described in the options and the subsequent contracts. A saleswoman employed by him obtained from the appellant a subscription for $1000 to this syndicate. The appellant mailed a check to the appellee in payment of her subscription and received an interim receipt therefor. This instrument was dated October 21, 1925, and entitled "In re: Trust No. 949," and by it the receipt of $1000 was acknowledged "in full payment of a pre-organization subscription to a syndicate to be known as G. Frank Croissant's Boca Raton Development, to be organized for the purpose of purchasing acreage in the State of Florida. This receipt is an interim receipt and a permanent receipt will be substituted therefor when prepared and executed. It is understood that if the proposed syndicate is not completed and the land is not purchased by January 2d, 1926, the holder hereof is entitled to the return of the amount subscribed." The instrument was signed, "Union Bank of Chicago, as agent, by F. H. Hayes, P., Asst. Secretary."

A syndicate agreement dated December 15, 1925, was prepared. The parties to this agreement were the several subscribers, called the beneficiaries, and Croissant in the dual capacity of trustee and manager. The capital of the syndicate was fixed at $2,100,000 and divided into 4200 units of $500 each. The interest of each subscriber was

undivided and in proportion to his subscription. The title to the property of the syndicate was vested in the trustee and he was given full power and authority, among other things, to manage, improve, sell and convey the trust estate or any part of it. A committee of five persons, of whom Croissant was one, was created to represent the beneficiaries. The appellee was neither mentioned in nor made a party to the agreement. The money collected in behalf of the syndicate and deposited with the appellee on and prior to December 15, 1925, amounted to $1,383,769.32. From these funds two disbursements had been made to Reilly, one of $500,000 on October 15, 1925, and the other of $60,000 four days later. On December 15, 1925, there remained on deposit with the appellee and to the credit of the syndicate, $219,547.94.

On December 31, 1925, the four contracts from Boyland as vendor were assigned by Reilly, the purchaser, to Croissant as trustee under the syndicate agreement. Croissant, on the same day, wrote the appellant requesting her to call at his office to sign the syndicate agreement and to receipt for the participating certificate. She complied with the request, signed the agreement and received the following certificate:

"No. 382                                                          2 Units

G. Frank Croissant's
Croissantania Boca Raton Syndicate
Boca Raton, Florida.

4200 Units                                                   $500 Each.

"This certifies that Mrs. Matie L. Moran is the owner of two (2) units in the Croissantania Boca Raton Syndicate, transferable on the books of the syndicate in person or by attorney duly .endorsed.

"This certificate is issued upon the terms of the syndicate agreement, dated December 15, 1925, and entitles the holder hereof to the rights, benefits and privileges accorded a participant under said agreement, but subject to and upon terms and conditions therein stated. By the acceptance hereof the holder agrees to be bound by all of the terms of the said agreement.

"Dated January 2, 1926.     G. FRANK CROISSANT, *Trustee.*"

Ninety-five members of the syndicate, including the appellant, started on a trip to Florida late in December, 1925, to inspect the property in which they were interested. They were escorted by Croissant and certain of his assistants and their tour of inspection in Florida occupied four days. On January 27, 1926, after their return, forty-seven, of whom the appellant was one, joined in a letter to Croissant in which they expressed their complete satisfaction with the project. About three months later the appellant attended a meeting of members of the syndicate at Croissant's office in Chicago and learned that the enterprise was encountering difficulties. Assurances were given, however, that no member would lose the money he had invested in it. In October, 1926, the appellant asked one of the appellee's officers concerning her investment and she was told to be patient and not to worry. The appellant made no demand upon the appellee for the return of the money she had paid in satisfaction of her subscription until this suit was instituted August 30, 1928.

The primary question presented is whether the appellant, by signing the syndicate agreement and accepting the participating certificate, and thereby becoming a member of the syndicate, is precluded from retracing her steps and demanding that the sum of money for which the interim receipt was issued be refunded to her by the appellee. The affirmative of that proposition is maintained by the appellee while the appellant asserts the opposite and insists that her execution of the syndicate agreement and acceptance of the beneficial certificate do not operate to prevent recovery by her in the present action.

The appellant made a subscription, not to an existing syndicate, but to one to be organized for the purpose of purchasing land in Florida. The interim receipt issued upon payment of her subscription provided that if the proposed syndicate was not completed and the land not purchased before January 2, 1926, the holder would be enti-

tled to the return of the amount subscribed. The receipt showed on its face that it had reference to a trust known as No. 949, and the receipt was executed by the ·appellee, not as principal, but as agent. More than two months after this receipt was issued, the appellant signed the syndicate agreement, received credit for the money she had deposited with the appellee and accepted a participating certificate as evidence of her undivided interest. She went to Florida and inspected the land which the syndicate proposed to sub-divide, improve and sell. A few weeks after her return she joined in a letter to Croissant, the trustee and manager, expressing approval of the project. She chose not to ask that the money she had deposited be refunded to her but to apply it in the purchase of an undivided beneficial inter-est under the syndicate agreement. Not until long after the venture had proved to be unprofitable, and more than two years and eight months after she had signed the syndi-cate agreement did she make claim, by instituting this suit, for the return of the money she had invested.

The Supreme Court of the United States, in *Bierce* v. *Hutchins*, 205 U. S. 340, said that an "Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone." Such a choice, once manifested by appropriate words or acts, is irrevocable. (Bishop on Contracts, 1887 ed. sec. 808). The right to an undivided interest under the syndicate agreement super-seded the appellant's right to have the money refunded upon non-performance of the conditions set forth in the interim receipt. The two rights were necessarily incon-sistent. The appellant could not become a member of the syndicate and continue in that character so long as there was the promise of financial profit and, after the failure of the enterprise became known, reverse her position, re-pudiate the character she had assumed and revert to her original status. She made her election when she became

a party to the syndicate agreement and thenceforth was bound by its provisions.

The appellant, however, argues that at the time the syndicate agreement was signed, the land had not been purchased within the meaning of that term as used in the interim receipt. "Purchase," in its enlarged and legal signification, means every mode of acquisition of an estate known to the law, except that by which an heir, on the death of his ancestor, becomes substituted in the latter's place by operation of law. (*Champion* v. *Spurck*, 302 Ill. 241; *Chicago and Eastern Illinois Railroad Co.* v. *Doyle*, 256 id. 514). A purchase may be made when a contract of purchase is signed. (*Dean* v. *Anderson*, 34 N. J. Eq. 496). Contracts for the purchase of various parcels of land had been entered into and assigned to the trustee under the syndicate agreement when that instrument was signed by the appellant. The acquisition of the title by a conveyance in fee simple was not made a condition precedent to the completion of the syndicate. The evidence fails to disclose non-compliance with the provisions of the interim receipt.

The final contention is that the withdrawals of funds from the syndicate's account with the appellee were made without the appellant's knowledge and that they were therefore fraudulent. The law charges a person with the knowledge he might have obtained by making use of the means afforded him. (*Johnson* v. *Miller*, 299 Ill. 276). If the appellant failed to exercise her right to become informed of the syndicate's status at the time she signed the agreement and remained silent after she ascertained or had the opportunity to ascertain the facts, she would not be permitted afterwards to complain. (*Richter* v. *Schuett*, 314 Ill. 127; *Stackpole* v. *Schnucker*, 225 id. 502; *Follett* v. *Brown*, 188 id. 244; *Naugle* v. *Yerkes*, 187 id. 358; *Sutter* v. *Rose*, 169 id. 66). She approved the project after her trip of inspection in Florida. The trustee was vested with

power to collect the money deposited with the appellee and to manage the estate. Manifestly, the evidence discloses no fraudulent action on the part of the appellee.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*