Charles Frenzel et al., Appellees, v. Lonnquist Company et al. Axel Lonnquist, Appellant.

Gen. No. 40,763.

378

Heard in the first division of this court for the first district at the June term, 1939. Opinion filed April 8, 1940.

CHARLES J. TRAINOR, of Chicago, for appellant.

ISADOR BECKER, FRANK A. RAMSEY and BEN A. STEWART, all of Chicago, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs filed their complaint in chancery against Axel Lonnquist and other parties to recover $15,000 paid for 150 shares of beneficial interest issued by a real estate trust. The basis of the suit was that the 150 shares were Class "D" securities which had been sold contrary to the provisions of the Illinois Securities law (ch. 121½, Ill. Rev. Stat. 1939). The case was

referred to a master in chancery who took the evidence, made up his report and recommended that a decree be entered against Lonnquist and some of the other defendants for $15,000 and $3,000 solicitors' fees. A decree was entered substantially as recommended and Lonnquist alone appeals.

No contention is made that the shares involved did not come within the provisions of the Illinois Securities law and it is conceded that the law had not been complied with.

The record discloses that, for a number of years, defendant had been engaged in subdividing property in Cook county on a rather large scale and was the equitable owner of a number of lots located in Mount Prospect, a suburb of Chicago. James M. Boorman and William J. Coughlin were builders and had purchased lots from Lonnquist. It was decided that a building trust be organized known as the Boorman and Coughlin Building Trust with the Home Bank and Trust Company of Chicago, as trustee. A number of lots were purchased from Lonnquist and title taken in the bank as trustee. January 11, 1929, a trust agreement was executed which recited that Boorman and Coughlin desired to build one hundred houses at Mount Prospect; that the B and C Building Trust had been created with the bank as trustee; that beneficial trust certificates in the amount of $75,000 were to be issued, each certificate representing an investment of $100 in the trust. The $75,000 was subscribed during January and February, 1929, Joseph Frenzel subscribing for 150 shares of the certificates for $15,000 January 26, 1929. He was the eighth signer to the subscription. Afterward the $15,000 was paid in two instalments, the first $10,000 and the second $5,000. The project was a failure and nothing was realized by any of the subscribers. The certificates were tendered back to defendants and a demand made for the return of the $15,000 which was refused. Later the instant case was brought.

Plaintiffs' case is predicated on the provision of sec. 37, ch. 121½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 13.48], which provides:

"Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery."

Plaintiffs contend that defendant comes within the provisions of paragraphs 2, 4 and 6 of section 2 of the act, the pertinent portions of which are (par. 2) : "Any natural person who acts as a promoter for and on behalf of a corporation, trust or unincorporated association or partnership of any kind to be formed shall be deemed to be an issuer."

(Par. 4) "The terms 'sale,' 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose, of a security or interest in a security for value. . . . The term 'sell' means any act by which a sale is made and the term 'sale' or 'offer for sale' shall include a subscription, an option of sale, a solicitation of sale, an attempt to sell, or an offer to sell, directly or by an agent, by a circular, letter or advertising, or otherwise; provided, however, that nothing herein shall limit or diminish the full meaning of the terms 'sale,' 'sell' or 'offer for sale' as used by or accepted in courts of law or equity. . . ."

(Par. 6) "The terms 'solicitor' and 'agent' shall include every natural person, other than dealer, broker or issuer, employed or appointed or authorized by a

dealer, broker or issuer, to sell securities in any manner in this State, or who takes subscriptions for the sale of any securities.''

On the other hand, defendant's position, as stated by his counsel, is that the uncontradicted evidence shows he ''was not a trustee, officer, director, solicitor, broker, agent of or owner or holder of shares in the said B and C Trust'' and that ''even if he had advised an officer or director of Frenzel Brothers Company, to purchase shares of beneficial interest in the Trust [which is not admitted], he would not thereby become liable.''

A further contention of defendant is that the evidence shows the 150 shares in question were subscribed for by Joseph Frenzel and not Frenzel Brothers Company; that the shares were issued to him and, therefore, plaintiffs who sue as trustees of Frenzel Brothers Company, a corporation, cannot recover, and the decree is erroneous and should be reversed.

There is evidence from which the court might properly find that defendant Lonnquist, solicited Charles Frenzel, who was secretary of the Frenzel Brothers Company (a brother of Joseph Frenzel, whose name appears as a subscriber for the 150 shares), to buy the shares for $15,000. Lonnquist was the owner of the lots which he sold Boorman and Coughlin or to the B and C Building Trust and title taken in the bank, as trustee. Part of the moneys derived from the sale of the certificates was to be used in paying off a mortgage of $500 per lot and Lonnquist was to be given a second mortgage on the lots for the balance of the purchase price. The master found that Lonnquist (and other defendants) was ''an officer, director, solicitor, agent and broker of and for said B and C Building Trust,'' and that defendants ''did counsel, advise, solicit and recommend to said Frenzel Brothers Company to buy 150 shares of beneficial interest in said B and C Building Trust; that during said period the said defendants

did unlawfully offer for sale to said Frenzel Brothers Company 150 shares of beneficial interest,'' in the Building Trust, and that Frenzel Brothers Company acted upon such solicitation, advice and recommendation of defendants and bought the 150 shares.

Much of the evidence, which was the basis of the finding by the master and by the chancellor, is directly contradicted by evidence offered on behalf of defendants and counsel for defendant who appeals, says that the findings are contrary to the manifest weight of the evidence. In addition to the evidence taken by the master, four witnesses testified before the chancellor, including Charles Frenzel and defendant Lonnquist, whose testimony in a great part was directly contradictory.

Upon a consideration of all the evidence in the record, we are unable to say the decree is against the manifest weight of the evidence. Under the facts, we think Lonnquist, who was interested in selling the lots (which could be brought about only by the sale of the certificates of interest), was a ''promoter,'' ''issuer'' and ''solicitor'' within the meaning of section 2 of the Illinois Securities law.

Defendant further contends that the 150 shares of beneficial interest in question were subscribed for by Joseph Frenzel; that the certificates were issued to him and kept by him until the time of his death and therefore Frenzel Brothers Company cannot maintain this suit even if there were a violation of the law; that the right of action, if any, is in the representative of Joseph Frenzel, deceased. We think this contention cannot be sustained. There is evidence to the effect that while the subscription list shows Joseph Frenzel to be the subscriber, the subscription was in fact that of Frenzel Brothers Company and that it was their $15,000 which paid for the certificates.

A further contention is made that the objections filed to the master's or special commissioner's report were

not considered by the commissioner; that defendant filed objections to the report which the court ordered to stand as exceptions and that such procedure is reversibly erroneous. The record discloses that the case was referred to Cornelius J. Harrington, a master in chancery of the superior court; that after he took the evidence and before he made up his report, he was elected judge of the circuit court of Cook county and thereafter was appointed special commissioner by the superior court to conclude the matter and make up his report. As special commissioner, he made up his report and, sometime thereafter, notified counsel that he had prepared and filed his report; that either party might file objections thereto in the office of the clerk of the superior court and they would be passed upon by the chancellor. The report was filed October 30, 1937, and on November 6, 1937, defendant Lonnquist filed his objections with the clerk of the superior court. More than a year thereafter, November 15, 1938, on motion of defendant Lonnquist, an order was entered giving him leave to file additional objections to the report and they were filed at that time. On the same date, defendant filed a motion that the report of the special commissioner "be set aside and declared for naught," or in the alternative, if the motion were denied that the report be "vacated and set aside, and this Court hear the case upon the evidence previously taken before the Master." The motion was denied and November 25, 1938, defendant called two witnesses who testified before the chancellor. November 28, plaintiff called a witness who gave testimony and on the same date, defendant took the stand and was further interrogated by counsel for both sides. November 28, an order was entered reciting that the matter came on to be heard upon the report of the special commissioner who at the time of the submission of his report, had been elected judge of the circuit court of Cook county; that the report was filed with the clerk of the superior

court, accompanied by notice to counsel to file objections with the clerk of the court, and that the matter would be heard by the chancellor to whom the case might be assigned; that defendant filed objections as directed and additional objections; that Judge Harrington had informed the chancellor he did not care to hear the objections, and it was ordered, over defendant's objections, that the objections and additional objections filed, stand as exceptions.

On the same day, November 28, 1938, defendant moved the court for leave to introduce additional evidence. The motion was supported by defendant's affidavit and December 7, following, an order was entered in which is recited the coming on of defendant's motion, supported by his affidavit; that defendant offered an exhibit which was received in evidence over plaintiffs' objection and it was ordered that a photostatic copy be inserted in the record in lieu of the original, etc. December 16, the decree appealed from was entered.

Defendant at no time moved the court to re-refer the matter to the special commissioner. While the customary practice is to have the master pass upon objections filed to the report before it is filed, yet we think the procedure was not indispensable in view of the record before us. *Brockman v. Aulger,* 12 Ill. 277. Moreover, the master did not hear all the evidence. After the report was filed, on motion of defendant, additional evidence was taken. Obviously the master could not pass on evidence which was not heard by him.

Upon a consideration of what was done in the case, the contention of defendant cannot be sustained. The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

Matchett, P. J., and McSurely, J., concur.