SUZANNE G. GOWDY, Individually and as Adm'r of the Estate of Howard F. Gowdy, Deceased, Plaintiff-Appellee, *v.* WALTER H. RICHTER *et al.*, Defendants-Appellants.

(No. 57691;

First District (3rd Division)—June 20, 1974.

Stephen C. Shamberg and Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, both of Chicago, for appellants A. C. McClurg & Co. and Philip Weisman.

John L. Fogel, of Chicago, for appellant Robert H. Greenberg.

Samuel E. Hirsch, of Chicago, for appellant Walter H. Richter.

Querrey, Harrow, Gulanick & Kennedy, of Chicago (Donald C. Gancer and Francis B. Stine, of counsel), for appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Howard F. Gowdy filed an action under the Illinois "Blue Sky" Law (Ill. Rev. Stat. 1967, ch. 121½, par. 137.1 *et seq.*) in the circuit court of Cook County seeking to rescind his $20,000 purchase of 200 shares of allegedly unregistered stock in Continental-Harrison Company, a Delaware corporation. Joined as defendants in the suit were Walter H. Richter, chairman of Continental's board of directors; A. C. McClurg and Company, an Illinois corporation; Philip Weisman, McClurg's president; and Robert H. Greenberg, a member of Continental's board of directors. The defendants rejected Gowdy's tender of the stock prior to trial and disclaimed liability under the statute. Gowdy died during the pendency of this action, and his widow, Suzanne G. Gowdy, was substituted as plaintiff in her capacity as special almin**istrator of Gowdy's estate. At the conclusion of the trial, the court also granted her motion to be named as an individual plaintiff. After a bench trial, the court

entered judgment for plaintiff imposing joint and several liability against all defendants for $28,500. The facts follow.

On July 29, 1965, a letter agreement was consummated between Weisman as president of McClurg and Richter regarding the purchase of the merchandise division of McClurg. Although a formal business contract was later executed, the letter contained the essential terms of the purchase. Richter and his unnamed associates were to create Continental-Harrison, which would buy the division of McClurg; arrange for the sale of $500,000 worth of capital stock of the buyer; deliver to McClurg an additional $500,000 worth of fully paid stock; pay McClurg $600,000 in cash prior to the closing date and $100,000 thereafter; allow McClurg to nominate three people to the buyer's board of directors; compel the buyer to purchase a division of Luminator-Harrison Corporation; and establish a closing date between November 1 and December 15, 1965.

To meet these prerequisites, Richter caused Continental-Harrison to be incorporated in August, 1965; helped to elect three nominees of Weisman to Continental's board of directors; had Continental acquire Luminator-Harrison's assets; made Continental's necessary cash payments; directed Continental's secretary to issue 10,000 shares of Class A common stock, par value $100, by the December 3 closing date. One-half of the shares, fully paid, were given to McClurg; the remaining half were purchased by a few people, with Richter owning at least 25 percent of the outstanding stock.

Gowdy, then unemployed, interviewed with Richter for employment in late December, 1965, or early January, 1966. Based upon his years of experience in marketing and sales promotion, he hoped to join Continental. An agreement was worked out whereby Gowdy would purchase a substantial amount of shares of stock in Continental. In turn, Richter would hire Gowdy. A cashier's check for $20,000 was issued on January 14, 1966, naming as payee "Walter Richter C-H-A-C," and was given to Richter by Gowdy on January 16. The check identified Gowdy as the remitter. The check, introduced into evidence, bore on the reverse side the restrictive endorsement "For deposit only Walter Richter C-H." Richter testified that the initials referred to a bank account set up to act as a clearing house for funds used to purchase capital sock in Continental.

A letter signed by Richter and bearing the date January 17, 1966, was introduced into evidence. It contained directions to the corporate secretary to cancel an enclosed certificate for 200 shares of common stock, par value $100, listed in the name of Edward Lutz, and to issue a new certificate for 200 shares of the same stock to Howard and Suzanne Gowdy as joint tenants. The Gowdy certificate was issued, and Gowdy

commenced work as a sales manager of a Continental subsidiary on January 17.

On May 11, 1966, Continental petitioned for bankruptcy and was placed in receivership. In 1966 Gowdy visited his attorney regarding a promissory note owed to him by Richter. On March 20, 1968, Gowdy notified Richter of his election to rescind the stock purchase, tendered the stock, and demanded repayment of the purchase price. A similar notice and tender were given to the other defendants on September 26 or 27, 1968. Mrs. Gowdy also made a tender of the stock at trial, but it was again rejected by the defendants.

At the conclusion of the trial, after receiving proposed findings of fact and conclusions of law, the trial court found in favor of the plaintiff and entered judgment against all four defendants in the amount of $28,500, consisting of the $20,000 purchase price, $6000 in accrued interest, and $2500 in attorneys' fees.

Defendants McClurg, Weisman, and Greenberg contend that the trial court erred in finding that the purchased stock had not been properly registered; in holding that the plaintiff had complied with the tender and notice provisions set forth in the Illinois Securities Act; in granting attorneys' fees to plaintiff; and in holding that the evidence sustained their substantive liability under the statute. Richter has filed a separate brief adopting the first three contentions of the other defendants, but does not contest his substantive liability. Richter additionally argues that he should escape any liability for selling unregistered securities because strict compliance with section 4G, one of the registration exemption provisions, is not required, and because the plaintiff should be estopped from rescinding the purchase.

Pursuant to section 13 of the Securities Act (Ill. Rev. Stat. 1967, ch. 121½, par. 137.13 A & B), a purchaser may elect to rescind a sale of securities made in violation of the provisions of the securities law upon the giving of timely notice and upon the tendering back of the securities to certain designated persons. All securities except those exempt are required to be registered with the Secretary of State's office prior to being offered or sold in this state. (Ill. Rev. Stat. 1967, ch. 121½, par. 137.5) Failure to comply with the requirement constitutes a violation of the Act. (Ill. Rev. Stat. 1967, ch. 121½, par. 137.12 A & D) A defendant bears the burden of showing that an unregistered security qualifies as an exemption under the Act. Ill. Rev. Stat. 1967, ch. 121½, par. 137.15A.

Defendants initially contend that the trial court erred in finding that the securities sold in the present case were not registered at the time of sale and were thus sold in violation of the Act.

Plaintiff's complaint alleged that the stock had not been registered at the time of the sale in violation of the Securities Act. Richter's answer admitted the averment. The other defendants framed their answers in the alternative, stating that they did not have sufficient knowledge to form a belief as to the truth of the allegation, but that "if a certificate was issued to plaintiff, it represented the transfer of all or part of a previously issued certificate that was owned by a person other than defendants [Weisman, McClurg, or Greenberg]."

■■ An admission in an answer constitutes a judicial formal admission, conclusive as to the admitted fact on the person making it. Thus, Richter's specific admission is binding upon him. *Coss v. Magdziasz* (1965), 65 Ill.App.2d 40, 212 N.E.2d 717.

In evaluating the recitals in the answers of the other three defendants, we must determine if the answers fairly respond to the substance of the allegation denied. (Ill. Rev. Stat. 1967, ch. 110, par. 40(3).) The failure of a defendant to explicitly deny a specific allegation in the complaint will be considered a judicial admission and will dispense with the need of submitting proof on the issue. *Continental Casualty Co. v. Fleming* (1964), 46 Ill.App.2d 276, 197 N.E.2d 88.

■■■ The second part of defendants' answers responds only to the question of who the seller was and fails to address itself to the charge that the stock was not registered at the time of sale. Since the evidence adduced at trial clearly showed that a certificate for 200 shares of stock had been issued to Mr. and Mrs. Gowdy for consideration, the failure of the defendants to explicitly deny the allegation that the stock was not lawfully registered at the time of sale appears to be a binding admission of that fact. Moreover, even if the answers were sufficient to create an issue of fact, defendants' position has no merit. Although plaintiff did not introduce direct proof that the stock sold was not registered at the time of sale, it is equally clear that defendants never disputed plaintiff's charge that the stock was non-registered. Defendants stipulated at trial that a report of sale had never been filed by anyone. The filing of a report of sale is one condition set out in section 4G of the Act to qualify an unregistered security as an exemption from the registration requirement. The defendants, in their proposed findings of fact, later reiterated their assertion that a report of sale had not been filed. Although defendants now characterize their statement in the proposed finding as an "informal suggestion," we perceive it as an admission (see *Allen v. United States Fidelity & Guarantee Co.* (1915), 269 Ill. 234, 109 N.E. 1035), since the purpose of proposed findings of fact is to enable the trial court to perceive and decide facts that are in issue. (*Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill.App.3d 582, 297

N.E.2d 316.) Furthermore, when specifying in their proposed conclusions of law the various elements plaintiff had to prove to prevail in this case, defendants totally omitted any mention of a violation of the Act. It seems clear that defendants conceded the fact that the stock was not registered at the time of sale.

Defendants next contend that the trial court erred in holding that the "purchaser" of the stock, for the purposes of making a tender of the stock and of supplying timely notice under the statute, was solely Mr. Gowdy. Defendants argue that the manifest weight of the evidence establishes Mrs. Gowdy as a joint purchaser with her husband, and hence a necessary party in the making of a tender and in the giving of timely notice. The record shows that Mr. Gowdy alone gave defendants notice of the rescission, and that Mr. Gowdy prior to trial, and Mrs. Gowdy during trial, made a tender of the stock to the defendants, although the parties disagree as to her capacity at the time she made the tender.

■■ Richter's answer to the complaint admitted that the stock was sold to Mr. Gowdy. Since sale and purchase are complementary terms (see Ill. Rev. Stat. 1967, ch. 121½, par. 137.2—5), we consider his answer a formal judicial admission uncontestable on review.

Since the other defendants denied all the charges contained in the purchaser allegation of the complaint, we must analyze the evidence offered at trial.

Mr. Gowdy, unemployed at the time, wrote Richter seeking to join Continental in a position commensurate with his experience. After the two men met, they agreed that Gowdy would be employed by Continental or one of its subsidiaries at an administrative or executive level. Gowdy, in turn, would purchase a substantial amount of stock. On January 14, 1966, Gowdy had a cashier's check drawn specifying "Walter Richter C-H-A-C" as payee, which was tendered to Richter on January 16. Gowdy was listed as remitter on the face of the check. The check was endorsed on the reverse "For deposit only Walter Richter C-H." The C-H account was set up by Richter upon the advice of his bank as a clearing house account for capital stock transactions involving Continental. On January 17, Richter directed the corporate secretary to cancel an outstanding certificate issued in the name of Edward Lutz and to issue a new one, pursuant to Gowdy's instructions, in the name of Mr. and Mrs. Gowdy as joint tenants with right of survivorship. At the same time, Gowdy began work as sales manager of Continental's subsidiary corporation.

Mrs. Gowdy testified that all the funds making up the purchase price were borrowed. The moneys were derived from three sources: her father,

Mr. Gowdy's brother, and a bank. The loan from the bank was obtained by increasing the mortgage on the Gowdy residence, which was held in joint tenancy. She also testified that she had participated in raising the funds and that she considered herself to be a joint owner of the stock.

██ The trial court's finding as to the purchaser in a securities transaction will not be overturned on review unless contrary to the manifest weight of the evidence. (*Frenzel v. Lonnquist Co.* (1940), 304 Ill.App. 377, 26 N.E.2d 687.) Although the term "purchaser" is not defined in the statute, we think a proper definition is a party to a transaction wherein he assumes ownership in exchange for valuable consideration. See *Williamson v. Berry* (1850), 49 U.S. 495.

██ We believe that the trial court properly found that Mr. Gowdy alone had purchased the stock. We consider it important to focus upon the actions and conduct of Richter, the man who directly negotiated the sale to Gowdy. Richter alone would know with whom he was negotiating, particularly in light of the fact that defendants claim neither fraud on the part of Gowdy nor an undisclosed principal-agent relationship between the Gowdys.

At all times, the negotiations for the stock purchase were handled solely by Richter and Gowdy. The employment contract concerned only Gowdy. His was the only name listed as remitter on the check used to buy the stock. Gowdy gave the check to Richter. When Gowdy instructed Continental to issue the stock in the names of himself and his wife as joint tenants, no objection was raised by Continental regarding Gowdy's authority to issue directions concerning the stock.

Since she was totally outside the contract negotiations for the purchase of stock, the largest role that Mrs. Gowdy can assume in the transaction is one of financier. Yet a financing party may assume a variety of legal roles with regard to the benefited party, such as donor, lender, or beneficiary of a resulting trust, that have no relationship whatever to the agreement between the contracting parties.

Defendants correctly point out that Mrs. Gowdy considered herself to be an owner of the stock. Indeed, she was the owner of an undivided one-half interest in the property. However, a person may become an owner of property without having been involved in the original sales contract. In the instant case, the person having the sole interest in making this deal was the purchaser and contracting party, Howard Gowdy. The court did not err in holding that Gowdy alone was the purchaser, and that his tender of the securities and notification to the defendants satisfied the statute.

Defendants next urge that Mr. Gowdy's notification to them of his election to rescind the purchase was not in timely accord with the

statute. The relevant provision, section 13B, states that the purchaser must give notice to those from whom he intends to seek recovery "within six months after the purchaser shall have knowledge that the sale of the securities to him is voidable." The record discloses that Gowdy tendered notice to Richter on March 20, 1968, and to the other defendants on either September 26 or 27, 1968.

Richter cannot contest the timeliness of the notice. Plaintiff's complaint alleged that Mr. Gowdy on March 8, 1968, first learned that the sale of the stock was voidable as to Richter, and notice was given Richter 12 days thereafter. Richter's answer admitted this allegation, denying only its legal relevancy. Richter thus made a formal, binding judicial admission.

The other defendants denied that the notice tendered to them on September 26 or 27, 1968, was timely. They contend that the defendant knew or should have known of their possible involvement in the sale at a much earlier time based upon the following facts in the record: 2 months after the sale to Gowdy, Continental petitioned for bankruptcy; Gowdy visited with his attorney in the fall of 1966 regarding a matter involving Richter; the notice to them was tendered 25 weeks after Richter received his notice.

■■ The 6-months rule regarding notice is not a statute of limitations. Rather, it is an equitable feature built into the statute to protect against stale claims. The issue of when a purchaser has sufficient knowledge to realize a sale is voidable against a particular defendant is a mixed question of law and fact on which a layman is entitled to acquire his first knowledge from an attorney. *Curtis v. Johnson* (1968), 92 Ill.App.2d 141, 234 N.E.2d 566.

Donald Gancer, one of plaintiff's attorneys, testified that he first learned of a possible securities violation on March 8, 1968, when in response to his letter of inquiry the Secretary of State informed him that no report of sale had ever been filed by Richter or Continental regarding the stock. Notice of election to rescind was given Richter on March 20, and this complaint was filed against Richter alone on March 27, 1968. Gancer testified that it was not until July 17, 1968, during the taking of Richter's deposition relating to the suit, that the witness obtained knowledge, based upon the letter agreement and subsequent contract, of the possible involvement of the other defendants. Gancer then gave notice to the other defendants on September 26 or 27.

■■■ The testimony was sufficient to establish the time that Gowdy and his attorney obtained knowledge of the possible involvement of the other defendants. The attorney was a competent witness. Where an attorney for a party takes the stand to testify, the fact of his employment

goes to the weight, not the competency, of his testimony. (*Manion v. Chicago, Rock Island & Pacific Ry. Co.* (1956), 12 Ill.App.2d 1, 138 N.E.2d 98.) Nor were defendants improperly restricted in their attempt on cross-examination to show Gancer was an interested witness. The pleadings revealed that plaintiff's attorneys were seeking fees of $6000. Defendants attempted to learn whether the attorneys had already been paid their fees, and the court sustained plaintiff's objection. The fact of interest had already been shown, and the trial judge did not abuse his discretion in limiting the extent of the examination. (See *Noncek v. Ram Tool Corp.* (1970), 129 Ill.App.2d 320, 264 N.E.2d 440.) In any event, it would not be reversible error.

■■■ The passage of time in and of itself cannot be deemed constructive notice on the part of Gowdy of defendants' possible involvement, especially in a complicated securities case such as this. (Compare *Moran v. Union Bank* (1933), 352 Ill. 503, 186 N.E. 182.) Furthermore, we can conceive of no constructive notice to Gowdy as to the nonregistered nature of the stock by virtue of Continental's bankruptcy petition. Nor is there any basis to suggest that Gowdy's visit to an attorney in 1966 should have put him on notice of the possible voidability of the stock sale as to these defendants. Gowdy talked to the attorney then about an unrelated matter, a promissory note owing to him by Richter. Gowdy's only contact was with Richter, and Richter testified that Gowdy had no knowledge of any of the financial transactions involving the other defendants. We will not assume, without evidence, that Gowdy knew not only that the sale was voidable but also that all these defendants were involved. We will not engage in such speculation, especially since the purpose of the statute is to protect the inexperienced investor against the irresponsibility of persons engaged in the business of disposing of securities of uncertain value. *Stein v. Twilight Motel, Inc.* (1961), 29 Ill.App.2d 131, 172 N.E.2d 642; *Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill.App.2d 96, 211 N.E.2d 596.

We will now consider contentions advanced by Richter, but not urged by the other defendants.

■■ Richter argues initially that strict compliance with most of the conditions set out in section 4G should not be demanded in determining whether the sale of an unregistered security qualifies under the protective features of this exemption provision. In short, he maintains that the requirement of the statute dictating the filing of a report of sale should be read in a directory and not mandatory fashion. This contention was not advanced in the trial court, and thus must be deemed waived for purposes of review. (*Woman's Athletic Club v. Hulman* (1964), 31 Ill. 2d 449, 202 N.E.2d 528.) Moreover, the language of the statute is specific

in mandating the filing of the report and absent total compliance with its directives precludes one from claiming the exemption. See *Mark v. McDonnell & Co.* (7th Cir. 1971), 447 F.2d 847.

Richter's contention that the "offering of sale" provision in section 4G is void for vagueness also was not made in the trial court and must be considered waived. Furthermore, this portion of the section did not become law until 3 years after the instant sale and hence Richter has no standing to challenge it.

Richter's final separate contention appears to be that since Gowdy conditioned his purchase of stock on obtaining an employment contract from Continental, he should be estopped from rescinding his purchase of the securities. No legal authority is cited in support of this proposition. ■■■ The law in Illinois is clear in allowing only statutory, not equitable, defenses to be raised by a defendant in a case involving a blue sky violation. The penal character of the statute negates the utilization of *in pari delicto* or estoppel defenses. (*Hudson v. Silver* (1933), 273 Ill.App. 40; *Wehrwein v. Eastman Springs Beverage Co.* (1925), 238 Ill.App. 443.) Additionally, the estoppel argument is predicated on the proposition that the *quid pro quo* arrangement between Gowdy and Richter was improper. To be deemed illegal, a contract must expressly contravene the law or known public policy. (*Simmons v. Columbus Venetian Stevens Buildings, Inc.* (1958), 20 Ill.App.2d 1, 155 N.E.2d 372.) The instant contract did neither. In our opinion, the estoppel argument is without merit.

We next consider the substantive features of section 13A in weighing the contentions of McClurg, Weisman, and Greenberg that the findings of their liability were against the manifest weight of the evidence. Richter does not contest his substantive liability.

Section 13A provides that joint and several liability will be imposed upon

> "the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesman who shall have participated or aided in any way in making such sale, and in case such issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making such sale * * *."

A "controlling person" is defined by statute to be

> "any person selling a security, or group of persons acting in concert in the sale of a security, owning beneficially * * * either
> (i) 25% or more of the outstanding voting securities of the issuer

of such security where no other person owns or controls a greater percentage of such securities, \* \* \*."

(Ill. Rev. Stat. 1967, ch. 121½, par. 137.2—4.) A "person" includes a corporation. Ill. Rev. Stat. 1967, ch. 121½, par. 137.2—3.

Among the several findings of liability against Richter and McClurg, the trial court found that both acted as a controlling person on whose behalf the stock was sold pursuant to the agreements entered into between them, and that both "participated or aided" in making the sale. The statute clearly reads that liability is established if either of the findings is correct.

In our judgment, the trial court was justified in finding that the McClurg corporation was a controlling person on whose behalf the stock was sold. McClurg and Richter owned 50 percent and a minimum of 25 percent, respectively, of the outstanding voting shares of Continental at the time of the sale to Gowdy. Richter was contractually obligated to perform several condition precedents within a short time in order to purchase McClurg's subsidiary. Large sums of money had to be furnished by a newly formed corporation, and the bulk of the money was to be obtained through the sale of Continental's capital stock. Although McClurg may not have been directly obligated to sell Continental's stock, there can be no doubt that any stock issued through Richter's efforts up to the time the letter agreement and contract were satisfied were performed on McClurg's behalf as well. Direct benefit inured to McClurg because the proceeds derived from the sale of stock would go to McClurg in satisfaction of the contract terms.

In a case in point, *Abrams v. Love* (1929), 254 Ill.App. 428, the plaintiff purchaser attempted to rescind the sale of stock made by subsidiary corporations of the defendant. Since the statute at that time permitted rescission only as to the "seller," defendant disclaimed liability. This court sustained plaintiff's position, holding that defendant sponsored the organization of the subsidiaries. Moreover, the parent, in developing the subsidiaries, knew it could pay for the development costs only out of the proceeds from the sale of the subsidiaries' stock. In the present case, McClurg, for all practical purposes, sponsored Continental, a new corporation. It also knew that Continental would be able to obtain enough money to fulfill its obligations to McClurg only by the sale of large amounts of capital stock.

McClurg argues, however, that it was impossible for the sale of stock to Gowdy on January 17, 1966, to have been on its behalf since at the time of closing on December 3, 1965, the requisite stipulated amount of 10,000 shares of stock had been issued and fully paid for.

We believe that the record shows otherwise. The transfer record book

of Continental, detailing the issuance of stock up to December 3, 1965, recited that the stock was issued and all the money received. However, Edward Lutz, a disinterested and uncontradicted witness, listed as having purchased 700 shares of stock on August 31, testified that after receiving his certificate he protested to Continental that he had only purchased 500 shares of stock. On December 21 Continental attempted to cure the error, but merely cancelled the certificate for 700 shares and issued to Lutz two certificates for 500 and 200 shares. Lutz again informed Continental of the fact that he had purchased only 500 shares. The error was not corrected until the Gowdy purchase. Richter then instructed the secretary to cancel the Lutz certificate for 200 shares and issue a new one for the same amount to the Gowdys.

We believe that plaintiff met her burden of showing that the sale of securities to her husband was made pursuant to the June 29 letter agreement. Although the McClurg contract recited that the 10,000 shares were to have been issued and paid for by the December 3 closing date, it is clear that as to at least 200 shares that had not been accomplished. It was not plaintiff's burden to detail how the corporation received the extra $20,000 in making up the $400,000 tendered to McClurg on August 31. A corporation intent on fulfilling its contract could have received the money in a variety of ways and issued the extra stock with the intent of "floating it" until a buyer could be found.

Richter himself testified that the proceeds from the Gowdy stock sale ultimately became part of the $400,000 supplied to McClurg. Although defendants argue that this testimony was conclusionary and should not have been admitted into evidence, we do not agree. Richter played the key role in the promotion of Continental's stock and was definitely in the position of knowing which persons were supplying the needed consideration. In any event, even if it were considered to be the witness' opinion, the fact that the witness had special knowledge of the matter in question and testified without analyzing the reason for the opinion or noticing its elements qualifies the testimony as an exception to the traditional lay witness opinion exclusion rule. *State Farm Mutual Automobile Insurance Co. v. Short* (1970), 125 Ill.App.2d 97, 260 N.E.2d 415.

McClurg suggests that the stock sold to Gowdy was probably owned by Richter himself and thus benefited him alone. McClurg notes that Lutz signed his name to the back of the erroneously issued stock certificate and that it eventually wound up in Richter's hands. The purchase money for the Gowdy sale was placed in the "Walter Richter C-H" bank account.

We do not believe that the foregoing facts warrant the legal conclusions offered by McClurg. The corporate secretary testified that Rich-

ter would instruct him to whom a certificate should be issued. Richter also was the person who handled the purchase money for the stock. Thus it would not be unusual for Richter in his corporate capacity to receive an erroneously issued certificate. Moreover, we do not consider it significant that Lutz' signature appears on the back of the certificate. Lutz never claimed ownership of the certificate ascribing 700 shares to him. His signature could not be considered a blank endorsement. Richter also testified that the designated bank account was a corporate account used as a clearing house for the sale of capital stock. Although the other defendants sought to impeach him on this issue by his testimony in another trial, he sufficiently explained his prior testimony to the degree that the trial court in the present case could properly find that the account was used for Continental's corporate activities. The trial court's finding of liability as to McClurg was not contrary to the manifest weight of evidence.

We next consider the correctness of the liability imposed personally upon Philip Weisman, the president and 90 percent shareholder of McClurg, a closely held Illinois Corporation. In imposing personal liability on Weisman, the court found McClurg to be the alter-ego of Weisman. ██ A corporation is an entity separate and distinct from its members. Liability cannot be imposed on an officer or director of a corporation because he held that position at the time a certain action occurred, or because he, as an agent of the corporation, was the person the aggrieved party dealt with regarding a particular transaction. (*Krumrine v. Wilbur E. Howett Co.* (1941), 311 Ill.App. 243, 35 N.E.2d 395 (abstract opinion).) In addition to grounds of fraud and inadequate capitalization, the corporate veil will be pierced only when the existence between the director or officer and the corporation has attained "such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice." *People ex rel. Scott v. Pintozzi* (1971), 50 Ill.2d 115, 128-129, 277 N.E.2d 844.

In the present case, plaintiff does not claim fraud, under-capitalization, or the promotion of injustice. She maintains that McClurg is the alter-ego of Weisman solely because of one clause contained in the letter agreement. That clause gave Richter and his associates the right to purchase back from McClurg the shares of Continental stock bought by McClurg "in the event that the Philip Weisman family at any time ceases to control A. C. McClurg."

We deem this reference insufficient to pierce the corporate veil. The Continental stock was given to McClurg, not to Weisman. If and when the Weisman family ceased to control McClurg and Continental chose

to exercise its option, the proceeds of the sale would accrue to McClurg. We do not believe that plaintiff established the existence of such unity of interest and ownership that the separateness of Weisman and Mc-Clurg had ceased to exist. The trial court erred in imposing liability upon Weisman personally.

We next discuss the issue of Greenberg's liability under the statute. The trial court found that Greenberg, a director of Continental, had actual knowledge of the sale to Gowdy and that such knowledge, absent his dissent, was sufficient to prove he "participated or aided" in the sale.

Prior to his election to Continental's board of directors as one of McClurg's nominees, Greenberg served as financial consultant to both McClurg and Continental. His chief duties as director were directed toward the arranging of financing for Continental. Greenberg testified that he was never consulted concerning the possibility of Howard Gowdy buying stock in Continental. He stated that the first time he heard of Gowdy was when he received the latter's notice of rescission and complaint in this action.

The sole testimony relating to Greenberg's possible knowledge came from Richter. He stated that the Gowdy sale came up at a meeting attended by himself and "Greenberg or Weisman." Richter further stated he could not remember any conversation he had with Greenberg concerning the Gowdy sale. However, under persistent questioning by plaintiff's counsel, Richter finally stated "that under the circumstances, looking retroactively, that the matter came up and we probably discussed the issuance of the stock." Defendant's request that the answer be stricken as conjecture was overruled by the trial court.

■■ The trial court erred in allowing the foregoing answer to stand. The answer was totally speculative and possessed no probative value. (*Kanne v. Metropolitan Life Insurance Co.* (1941), 310 Ill.App. 524, 34 N.E.2d 732.) Since there was no competent evidence to establish that Greenberg had knowledge of the Gowdy sale, the trial court erred in imposing personal liability upon Greenberg. In so holding, it is unnecessary to reach the question whether knowledge alone plus failure to object to the sale would have been enough to establish that Greenberg "participated or aided" in the sale.

The final contention raised by all the defendants is that the trial court erred in awarding $2500 in attorneys' fees when the attorneys had a contingent fee contract with plaintiff.

The pertinent statutory provision is section 13A(2). It states that in addition to the full amount paid for the securities and interest, a purchaser of a voidable security is entitled to an award for "reasonable fees of such purchaser's attorney incurred in any action brought for recovery of the amounts recoverable hereunder."

In *Spiegel v. Frangoulis* (1933), 271 Ill.App. 526, the only case in point, this court interpreted a provision of like substance and held that, where plaintiff's attorney is operating on a contingent fee basis with his client, separate damages for attorney's fees should not be awarded. The court stated at page 531:

> "It seems clear to us that the attorney's fees contemplated by this section are those which the purchaser of the securities either has paid to his attorney for the service or the amount which he has become obligated to pay therefor, and does not refer to situations like the present case, where the client has not paid, nor engaged to pay, the attorney for the service rendered, but has agreed to give him therefor a portion of what he may recover, it being contingent upon his prevailing in the suit * * *."

We are not persuaded by the reasoning in *Spiegel* and respectfully decline to adopt its holding. Overlooking what appears to be an internal inconsistency in the holding since a purchaser on a contingent fee basis becomes "obligated to pay" once a verdict is returned in his favor, we believe that to impose an interpretation of this section as advocated by defendants would discourage suits of this nature. The statute itself does not state that a purchaser must make a choice regarding the manner in which he will compensate his attorney. The clear purpose of the provision is to warn violators of the securities law that based upon the penal character of this law they will be responsible for reasonable attorney's fees incurred in returning the purchaser to his status quo. As our supreme court observed in *Foreman v. Holsman* (1957), 10 Ill.2d 551, 553-554, 141 N.E.2d 31:

> "The fact that upon rescission one may recover attorneys' fees, as well as the purchase price, indicates that this civil remedy is intended to afford an additional punishment for an offending party. To permit this remedy to be "waived" or "released" prior to or contemporaneously with the sale of unregistered securities could thwart the very objective of the statute and violate the declared public policy of this State."

The trial court correctly awarded reasonable attorneys' fees.

For the foregoing reasons, the judgment of the circuit court of Cook County in favor of plaintiff in the sum of $28,500 against Walter H. Richter and A. C. McClurg and Company is affirmed. The judgment against Philip Weisman and Robert H. Greenberg is reversed.

Affirmed in part; reversed in part.

McGLOON and MEJDA, JJ., concur.