Donna DENTEN, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and Mary S. Webster, as Independent Executor of the Estate of Charles L. Webster, Deceased, Defendants.

No. 93 C 6934.

United States District Court,
N.D. Illinois,
Eastern Division.

May 30, 1995.

Mark Steven Mester, Latham & Watkins, Myron M. Cherry, David D. Merritt, Cherry & Flynn, Chicago, IL, for Donna Denten.

Peter A. Cantwell, Stephen Falk Boulton, John Sheridan Burke, Cantwell & Cantwell, Chicago, IL, for Merrill Lynch Pierce Fenner & Smith Inc.

George Constantine Pontikes, Darlene Anne Blaszczak, George C. Pontikes & Associates, Chicago, IL, for Mary S. Webster.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") has moved for a dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion is denied in part and granted in part.

### BACKGROUND

Shortly after her divorce in 1990, plaintiff was solicited by Charles Webster ("Webster") to become a client of Merrill Lynch. Webster was an Executive Vice President of Merrill Lynch, where he had been a broker and employee for over twenty years. Plaintiff's father had been a long-standing client of Merrill Lynch, with Webster as his principal contact. Based on her father's positive experience with Merrill Lynch and because of the resources and reputation of Merrill Lynch, plaintiff agreed to become a client of Merrill Lynch and have Webster handle her account.

According to plaintiff, Webster was to take care of the necessary paperwork to have an account opened on plaintiff's behalf at Merrill Lynch. Webster later advised plaintiff that an account had been opened. Based on Webster's position and tenure with Merrill Lynch, plaintiff claims that she had every reason to believe that Webster was authorized to open new accounts at Merrill Lynch.

After plaintiff became a client, Webster began calling plaintiff from his Merrill Lynch office almost everyday, regarding investment opportunities of which Webster knew through Merrill Lynch. Plaintiff would also call Webster at his Merrill Lynch office. On several occasions, plaintiff met with Webster at Merrill Lynch's Chicago office. Webster sent various notes and letters to plaintiff's home on Merrill Lynch letterhead and in envelopes bearing Merrill Lynch's name and address.

According to plaintiff, Webster explained to plaintiff that given the nature of her assets, she needed a conservative investment strategy that would generate a steady flow of income. Webster promised to identify one or more investments at Merrill Lynch for plaintiff which would fit her needs.

Beginning in 1991, Webster advised plaintiff that he had an extremely safe and stable investment for her in a radio station network. Webster also discussed this potential investment with plaintiff's father. Webster stated that if plaintiff and her father would purchase a majority of the radio station network stock, the network would be renamed "The Denten Broadcasting Company." At Webster's suggestion, a mortgage was taken out on plaintiff's home in the amount of $700,000, and the proceeds were invested in the network.

In October 1991, Webster filed articles of incorporation for entities called Webster Broadcasting, Inc. with the Illinois Secretary of State. According to plaintiff, Webster, without her knowledge, listed himself as sole shareholder of the corporation formed to own and control the radio stations, leaving plaintiff with no ownership of her investment which was in excess of $1,200,000.

In late August 1992, plaintiff's father died. Sometime before his death, he gave Webster a letter addressed to plaintiff and directed Webster to deliver the letter to plaintiff when he died. In his letter, plaintiff's father described where he had hidden cash, jewelry and other valuable items for his daughter to retrieve upon his death. When plaintiff's father died, plaintiff claims that Webster opened the letter, and retrieved the valuables for himself. Plaintiff alleges that on Septem-

ber 8, 1992, Webster deposited the cash retrieved from The Dentens' home into his own bank accounts.

Also on or about September 8, 1992, John Verbockle, a General Manager and Vice President of Merrill Lynch, contacted plaintiff. At Verbockle's request, plaintiff met him, Merrill Lynch's counsel, and other Merrill Lynch representatives from New York at Merrill Lynch's Chicago office. During this meeting, the radio stations and Webster were discussed. The Merrill Lynch representatives told plaintiff that Webster was recently dismissed for "inappropriate conduct with clients." According to plaintiff, at this meeting Merrill Lynch accepted responsibility for Webster's actions and told plaintiff that she would recoup her lost investments from Merrill Lynch. Plaintiff claims that the Merrill Lynch representatives told plaintiff that the matter would be solved to her satisfaction.

Plaintiff filed suit against Mary Webster, as executor of the estate of Charles Webster, and Merrill Lynch on November 12, 1993. After Merrill Lynch's first motion to dismiss was granted, plaintiff filed an amended complaint alleging the following counts against Merrill Lynch: 1) violation of Securities Exchange Act, 15 U.S.C. § 78j(b); 2) violation of Securities Exchange Act, 15 U.S.C. § 78t; 3) aiding and abetting Webster's violations of § 10(b) of the Securities Exchange Act; 4) violation of Illinois Securities Law, 815 ILCS 5/1–19; 5) violation of Illinois Consumer Fraud Act, 815 ILCS 505/1–12; 6) breach of fiduciary duty; 7) fraud; 8) negligence; 9) conversion of property; 10) conspiracy to defraud; 11) breach of contract.

### ANALYSIS

In ruling on a motion for dismissal, the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2., 53 L.Ed.2d 557 (1977). In addition, the court must view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Both parties agree that pursuant to the Supreme Court's ruling in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), count three does not state a cause of action against Merrill Lynch and therefore, is dismissed.

### I. *Secondary Liability*

Of the remaining 10 counts in plaintiff's first amended complaint, six counts seek to impose liability against Merrill Lynch vicariously for the acts of Webster. These counts include a § 10(b) claim (Count I)[1] and five state law claims (Counts IV, V, VII, VIII, and IX).[2] Defendant Merrill Lynch argues that plaintiff has failed to allege a basis of Webster's apparent authority and that plaintiff was on notice that Webster's investments were highly unusual and irregular, and thus has established no basis for Merrill Lynch's vicarious liability.

■ Under the common law doctrine of respondeat superior, plaintiff may hold Merrill Lynch vicariously liable for its employee's violations as set out in Counts I, IV, V, VII, VIII and IX, if Merrill Lynch authorized, ratified or created an appearance that the acts were authorized.[3] *Rosenthal & Co. v. Commodity Futures Trading Commission*,

---

**1.** The Seventh Circuit has held that both § 20(a) and common law vicarious liability principles apply in securities fraud cases. *Henricksen v. Henricksen*, 640 F.2d 880, 887 (7th Cir.1981), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981).

**2.** The six state law claims include: violation of Illinois Security Act, violation of Illinois Consumer Fraud Act, common law fraud, negligence and conversion.

**3.** In this case, plaintiff does not argue that vicarious liability should be imposed based on actual

802 F.2d 963, 966 (7th Cir.1986).[4]

■ In *State Security Insurance Co. v. Burgos,* 145 Ill.2d 423, 164 Ill.Dec. 631, 635, 583 N.E.2d 547, 551 (1991), the Illinois Supreme Court summarized the law of agency with respect to apparent authority.

It is a well-established precept of agency law that a principal will be bound by the authority he *appears* to give another, as well as that authority which he actually gives.... Apparent authority arises where a principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts.... Apparent authority is that authority which a reasonable prudent person, in view of the principal's conduct, would naturally suppose the agent to possess.

*Id.* at 431, 164 Ill.Dec. at 635, 583 N.E.2d at 551 (emphasis in original).

Accordingly, apparent authority is based on two premises which include: 1) a manifestation by the principal to the third party, and 2) a reasonable belief by the third party that the agent is acting within the authority granted by the principal. *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993).

■ In a motion to dismiss, allegations must be viewed in the light most favorable to the plaintiff. Pursuant to this standard, plaintiff has sufficiently established a claim against Merrill Lynch based on apparent authority. First, according to the allegations, Merrill Lynch employed Webster as an Executive Vice President. For twenty years, Merrill Lynch furnished Webster with a large office, telephone number and Merrill Lynch letterhead. These allegations support the fact that Merrill Lynch created the impression that Webster had authority from Merrill Lynch to act as he did.

Additionally, the allegations support plaintiff's reasonable belief that Webster had the authority from Merrill Lynch. Plaintiff alleged that part of her decision to become a client with Merrill Lynch was the relationship her family enjoyed with the company through Webster who was their personal representative, advisor and financial consultant. Plaintiff also alleges that Webster reminded plaintiff of Merrill Lynch's reputation and his twenty years of experience with Merrill Lynch to persuade her to become a client of Merrill Lynch.

Defendant argues that the alleged facts set out in the complaint put plaintiff on notice that the transaction with Webster was not "in the regular course of business" of Merrill Lynch.[5] In order to apply a theory of apparent authority, the transaction must seem regular on its face to the third person and the agent must appear to be acting in the ordinary course of business. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982); *Harrison,* 974 F.2d at 884. Based on the long term relationship Webster had with the Denten family, it is reasonable that plaintiff would believe that the investment was in the ordinary course of business. Specifically, plaintiff alleges that Webster told her that Merrill Lynch clients routinely made their investments with Merrill Lynch through trust funds that name the primary financial advisor as a trustee. Furthermore, plaintiff alleges that Webster advised plaintiff that the radio station network would be an extremely safe and stable investment. These allegations, viewed in the light most favorable to the plaintiff, demonstrate that plaintiff would not have notice that the transaction was outside the scope of Webster's employment. Furthermore, in making this argument Merrill Lynch merely raises factual disputes and credibility issues which are proper before a fact-finder, not within the scope of a motion to dismiss. At this point, plaintiff has alleged facts that the busi-

authority or a ratification theory and therefore, these issues will not be addressed by the court.

4. Determining vicarious liability for the plaintiff's state law claims is governed by Illinois law whereas vicarious liability for plaintiff's federal claim would presumably be governed by federal

principles. This court (as did the parties) will rely on federal and state cases interchangeably since there is no discernible distinction on this legal issue.

5. *Defendant's Reply Memorandum,* p. 7.

ness transactions appeared to be regular and in the ordinary course of business. Therefore, Counts I, IV, V, VII, VIII and IX, which allege Merrill Lynch is accountable based on the secondary liability theory of respondeat superior, survive the motion to dismiss.

*II. Illinois Securities Law Claim*

■ Count IV of plaintiff's complaint alleges a cause of action arising under the Illinois Securities Law of 1953, 815 ILCS 5/1–19. Merrill Lynch argues that dismissal of Count IV is proper because plaintiff did not comply with Section 13(B). According to Merrill Lynch, plaintiff failed to allege that she gave Merrill Lynch six months notice that she would be seeking recovery as provided for in Section 13(A) of the Illinois Securities Law. Section 13(B) of the Illinois Securities Law, 815 ILCS 5/13, requires that:

> Notice of any election provided for in subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or be personal service.

In plaintiff's first amended complaint which was filed on September 16, 1994, plaintiff alleges that she became aware of the violations of federal and state securities laws less than one year ago.[6] This allegation exactly repeated what plaintiff claimed in her original complaint even though the original complaint was filed on November 12, 1993.[7] Based on this information, it appears that plaintiff is claiming she became aware of the securities violations sometime within the year prior to the filing of the original complaint.[8]

Illinois courts have held that service of a summons and complaint containing an offer of tender and demand for recision is sufficient to satisfy the notice requirement of Section 13(B) if served within the requisite six months. *Norville v. Alton Bigtop Restaurant, Inc.*, 22 Ill.App.3d 273, 284, 317 N.E.2d 384, 391 (1974); *Bultman v. Bishop*, 120 Ill.App.3d 138, 143, 75 Ill.Dec. 552, 556, 457 N.E.2d 994, 998 (1983), *see also, Endo v. Albertine*, 812 F.Supp. 1479, 1496 (N.D.Ill. 1993). Assuming arguendo that plaintiff's complaint was sufficiently plead to satisfy notice, plaintiff does not allege that the complaint was served within 6 months after she acquired knowledge; rather, the complaint states that she acquired knowledge within the year prior to the filing of the complaint. This allegation does not meet the requirement that notice must be given within 6 months of learning that the securities issued are voidable.

■ Plaintiff argues that Merrill Lynch was put on notice during the September 8, 1992 meeting which Merrill Lynch asked plaintiff to attend. At this meeting, plaintiff alleges that Merrill Lynch assured plaintiff that it would take responsibility for Webster's actions and therefore, plaintiff argues that Merrill Lynch had notice as of this day. This argument is implausible for two reasons. First, Section 13(B) specifically requires notice "of any election provided for in subsection A of this Section." According to plaintiff, at the September 8, 1992 meeting, Merrill Lynch assured plaintiff that it would take responsibility but plaintiff does not allege that she told Merrill Lynch that she would be pursuing recovery under the Illinois Securities Law. Providing notice requires plaintiff to notify Merrill Lynch that it will be making this claim; rather than, merely asserting that

---

6. *Plaintiff's First Amended Complaint*, p. 13, ¶ 53 (Sept. 16, 1994)

7. *Plaintiff's Original Complaint*, p. 10, ¶ 35 (Nov. 12, 1993).

8. Illinois courts have held that "even though an investor might know of facts that would void his security purchase, it is only when he learns, possibly from his attorney, that those facts might

have such a legal consequence that the statutory six month period begins to run." *Fisher v. Samuels*, 691 F.Supp. 63, 73 (N.D.Ill.1988) (quoting *Hidell v. International Diversified Investments*, 520 F.2d 529, 539 (7th Cir.1975)). Presumably, plaintiff's allegation that she became aware of violations of the securities law is equivalent to her awareness of the legal consequences of Webster's actions.

Merrill Lynch has knowledge of Webster's actions.

Second, if this meeting amounted to notice to Merrill Lynch of plaintiff's securities claim, it would also mean that plaintiff had knowledge as of this date of Webster's alleged violations of state securities law. Plaintiff, however, alleges that she did not become aware of these violations until sometime after November 12, 1992.[9] Therefore, if the court was to accept plaintiff's argument, plaintiff would be contradicting her own allegations. Because of plaintiff's failure to allege facts which would establish that the notice requirement was met, plaintiff's claim under the Illinois Securities Law (Count IV) must be dismissed.

### III. Plaintiff's Remaining Claims

There are four counts which are based solely on Merrill Lynch's actions and not on a secondary liability theory. These counts include her claim under Section 20 of the Securities Exchange Act of 1934 (Count II),[10] breach of fiduciary duty (Count VI), conspiracy (Count X), and breach of contract (Count XI). Defendant does not present any basis for the dismissal of these claims and therefore, the court will not address the sufficiency of these claims.

### CONCLUSION

Based on these reasons, defendant Merrill Lynch's motion to dismiss is DENIED IN PART and GRANTED IN PART. Based on the parties' agreement, Count III is DISMISSED. Count IV (Illinois Securities Law claim) is DISMISSED. Defendant's motion is DENIED as to remaining Counts I, II, V, VI, VII, VIII, IX, X, XI.

---

9. In her original complaint, plaintiff states that she became aware of said violations less than one year ago. Her original complaint was filed on November 12, 1993.

10. The Seventh Circuit in *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993), set out a two-part standard to be applied in construing liability under this section. The court must look to whether the alleged "control person" actually exercised control over the operations of the person in general and then, to whether alleged "control person" possessed the ability or power to control the allegedly violative activity of the agent, whether or not that power was exercised.