In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3193

TIMOTHY L. JACKS,

Plaintiff-Appellant,

v.

SCHNEIDER SECURITIES, INCORPORATED,
BARRY D. TULL, and THOMAS GRAFTON,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98-4114--Joe B. McDade, Chief Judge.

ARGUED April 19, 2000--DECIDED JUNE 27, 2000

Before HARLINGTON WOOD, JR., KANNE, and
DIANE P. WOOD, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.  This
is an appeal from a district court order
granting a motion for summary judgment in
favor of Schneider Securities, Inc.
("SSI"), Barry Tull ("Tull"), and Thomas
Grafton ("Grafton"). Appellant, Timothy
Jacks ("Jacks") filed suit, alleging
violations of sec. 13 of the Illinois
Securities Law of 1953, 815 Ill. Comp.
Stat. 5/13 (West 1993) ("Illinois
Securities Law" or "Act"). The district
court had jurisdiction pursuant to 28
U.S.C. sec. 1332.

I.  BACKGROUND

   SSI is a corporation with its primary
place of business in Colorado. Tull, a
citizen of Colorado, and Grafton, a
citizen of California, were both formerly
employed by SSI. Jacks, an Illinois
resident, purchased Maesa Gaming stock
from SSI, through its employees Tull and
Grafton, on five separate occasions
between January and March of 1994.

Jacks concedes that he learned of possible violations of the Illinois Securities Law in August 1996. On August 16, 1996, Jacks sent SSI the following handwritten letter:

I am making a complaint against Schneider Securities Inc., and Tom Graffton [sic] (stockbroker). He misrepresented Masa [sic] Gaming stock. He sold me appromately [sic] 98,000 shares, average stock cost 75 cents per share. When I started selling my stock he quit working for Schneider Securities Inc. and went to work for Masa [sic] Gaming. I believe that there was a [sic] act of fraud. I lost over $50,000. I demand my money back.

The letter was sent by certified mail, return receipt requested. On October 10, 1996, Jacks sent a second letter to SSI containing a list of five questions requesting information relating to the receipt of his first letter and information regarding Tull and Grafton. This letter was also sent by certified mail with return receipt requested.

Jacks filed suit against SSI, Tull, and Grafton on August 19, 1998, alleging several violations of the Illinois Securities Law. Jacks' allegations included stock manipulation, misrepresentation of risk and suitability of stock, and failure to disclose Maesa Gaming's involvement in litigation. The defendants removed the case from Rock Island County Court to the United States District Court for the Central District of Illinois, and then filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b). For the purposes of the motion for summary judgment, the defendants stipulated to all facts alleged by Jacks, and Jacks conceded all facts alleged by the defendants. Therefore, there are no disputed facts.

In their motion for summary judgment, the defendants asserted that Jacks did not provide the notice that is required under sec. 13 of the Act. Section 13(B) requires the purchaser to give notice if he or she chooses to void his or her purchase. 815 Ill. Comp. Stat. 5/13 (B). The defendants claimed that the letters Jacks sent to SSI did not afford proper

notice.  The district court granted summary judgment for the defendants, holding that "a 13(B) notice must at least refer generally to Illinois law."

## II.  DISCUSSION

We review the district court's grant of summary judgment de novo. Allensworth v. General Motors Corp., 945 F.2d 174, 178 (7th Cir. 1991). No Illinois court has addressed the required content for proper notice under sec. 13(B); therefore, we view this issue as a matter of first impression. Under sec. 13(A) of the Act, any sale of securities made in violation of the provisions of the Act is voidable at the election of the purchaser, provided the purchaser satisfies certain statutory requirements. 815 Ill. Comp. Stat. 5/13 (A). The issue we are presented with is whether Jacks' letters to SSI were sufficient to satisfy the statutory notice requirements set out in sec. 13(B) of the Act.

Section 13(B) provides:

Notice of any election provided for in subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of securities to him or her is voidable, to each person from whom recovery is sought, by registered mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed or by personal service.

815 Ill. Comp. Stat. 5/13 (B).  Subsection A provides two options for recovery by the purchaser. Following the rescission of a voidable sale, the purchaser can either recover (1) the full amount paid, plus interest earned from the date of purchase; or (2) if the purchaser no longer owns the stock, the amount set forth previously in clause 1, minus any amounts received through a subsequent sale of the stocks. 815 Ill. Comp. Stat. 5/13 (A).

While no Illinois state court has expressly considered the required content for a sec. 13(B) notice, Illinois cases have stated that the provisions of the Act should be "liberally construed to

protect the investing public from fraud and deceit in the sales of securities." Norville v. Alton Bigtop Restaurant, Inc., 317 N.E.2d 384, 391 (Ill. App. Ct. 1974) (citations omitted). The statutory six-month notice is not a statute of limitations, but is an "equitable feature" to protect against stale claims. Bultman v. Bishop, 457 N.E.2d 994, 997 (Ill. App. Ct. 1983); Gowdy v. Richter, 314 N.E.2d 549, 556 (Ill. App. Ct. 1974). The six-month period does not begin until the purchaser is aware that his or her purchase is voidable. Hidell v. International Diversified Invs., 520 F.2d 529, 539 (7th Cir. 1975).

Defendants do not dispute that the two letters Jacks sent to SSI fell within the statutory six-month period. There is also no dispute that the letters were certified and return receipt was requested. Jacks argues that this is enough to satisfy the statutory requirement for notice, particularly if the statute is to be "liberally construed" and the time limit is an "equitable feature" to protect against stale claims.

However, the Norville, Gowdy, and Bultman cases upon which Jacks relies refer only to the form of the notice and not the content. Norville held that filing a complaint could substitute for the notice if the complaint was filed within the six-month period. 317 N.E.2d at 391. Gowdy ruled that the six-month time period should only start when the purchaser has knowledge that the sale is voidable. 314 N.E.2d at 556. In Bultman, the purchasers informed the defendants that they wished to avoid the sale and receive "the purchase price and other sums allowed by the statute." 457 N.E.2d at 996. The court in Bultman held that if the notice is mailed by certified mail instead of registered mail, then the notice may still meet the statutory requirements./1 Id. at 997. None of these issues apply in the present case. Unlike the plaintiff in Norville, Jacks did not file a complaint until two years after he discovered that the sale was voidable; therefore, he cannot argue that his complaint fulfilled the statutory notice requirement. In the present case, there is no dispute as to when the six-

month time period began as was the case in Gowdy. There is also no dispute that Jacks sent the letters in the proper form, which distinguishes this case from Bultman.

In the present case, we must determine whether the content of Jacks' letters was sufficient to satisfy sec. 13(B). One district court case, Denten v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 887 F. Supp. 176 (N.D. Ill. 1995), touches on this issue. In Denten, the court found that an oral notice was insufficient, in part because "plaintiff does not allege that she told Merrill Lynch she would be pursuing recovery under the Illinois Securities Law. Providing notice requires plaintiff to notify Merrill Lynch that it will be making this claim; rather than, merely asserting that Merrill Lynch has knowledge of [the alleged violations]." Id. at 180-81. While Denten turns on the insufficiency of an oral notice, it also clearly states that the notice is insufficient if it does not inform the potential defendant that the purchaser is making her claim under the Act.

Clearly, the second letter Jacks sent to SSI, which only poses a list of questions, does not provide the proper notice. The first letter sent to SSI makes no mention that Jacks is making his complaint under the Act or Illinois law. He does allege misrepresentation and fraud, and demands his money back; however, absent any reference to Illinois law, this letter could be construed as a disgruntled customer who is demanding a refund of the money he lost, but is not making a legal claim for rescission of the sale under sec. 13. Even if Jacks were making a legal claim, it is unclear from the letter whether he is making that claim under Illinois, Colorado, or federal securities law.

The Act requires that "[n]otice of any election provided for in subsection A of this Section shall be given . . . ." 815 Ill. Comp. Stat. 5/13 (B). The elections under subsection A are to recover (1) the full amount paid, plus interest earned from the date of purchase; or (2) if the purchaser no longer owns the stock, the amount in clause 1, minus any amounts received through a subsequent sale of

stocks. 815 Ill. Comp. Stat. 5/13 (A). From the letter, it is not clear if Jacks is demanding the entire amount he spent on the stock, which would be approximately $73,500, or if he is demanding only the $50,000 that he lost. Jacks states in his letter, "When I started selling my stock, [Grafton] quit working for Schneider Securities Inc. and went to work for Masa [sic] Gaming." It is not clear how much of his stock, if any, Jacks sold. Therefore, it is unclear which of the two options under subsection A Jacks is electing. Since he did not expressly demand to rescind the sale, it is unclear if the demand for his money back is in fact a demand to rescind the sale, or only a demand for the return of the lost money while Jacks still keeps the stocks. As the Illinois Appellate Court held in Bultman, "[s]ellers of securities have no liability under [the Act] until they have received notice of the buyers' intention to avoid the sale." 457 N.E.2d at 997 (emphasis added).

In sum, Jacks' letter did not state he was making his claim under Illinois law. Furthermore, he only stated that he was demanding his "money back", and not that he wanted to rescind the sale. It is unclear if he was demanding only the $50,000 he lost, or the entire amount he invested. It is also unclear whether he wished to keep the stock that he purchased, in which case subsection A would not have applied. Because of these factors, we find that neither of the letters Jacks sent to SSI constitute proper notice under sec. 13(B), even when we interpret the Act liberally as Illinois case law requires.

Jacks argues in the alternative that even if he failed to give proper notice under the Act, the notice requirement is an equitable feature designed to prevent stale claims, and lack of proper notice should not serve as an absolute bar to his suit. However, under the facts of the present case, there is nothing inequitable in requiring proper notice. As Jacks concedes, he had knowledge of the Act at the time he sent the letters to SSI. Section 13(B) clearly requires that "[n]otice of any election" sought be given. As previously discussed, Jacks failed to give this notice. This

deviation from the statutory requirements is not a slight variance, but rather one which undermines the entire purpose of the notice requirement.

Tull claims that because he did not receive the letters Jacks sent, Jacks cannot allege notice was sent to Tull since the Act requires notice to be sent "to each person from whom recovery will be sought." 815 Ill. Comp. Stat. 5/13 (B). Because we find, as did the district court, that the notice sent to SSI was insufficient, we need not address whether Tull received constructive notice due to his employment with SSI.

AFFIRMED.

/1 At the time the Act only referred to registered mail and not certified mail.