No. 2--05--0919                                    filed: 5/31/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JACQUELINE ZAHL, GENE KRUPA, and LYNN KRUPA, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04--L--1334 |
| RONALD A. KRUPA, Individually, | ) ) ) | |
| Defendant | ) ) | |
| (Jones and Brown Company, Inc., and John G. Creighton, Thomas Kulakowski, Ronald A. Krupa, John Creighton, Larry Wright, Ross Boehmer, Terry Mooney, Patricia M. Dell'Aquila, Marysue Brown, Ron Krol, and Steven Brown, as Directors and Officers of Jones and Brown Company, Inc., Defendants-Appellees). | ) ) ) ) ) ) ) ) ) ) ) | Honorable John T. Elsner, Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Jacqueline Zahl, Gene Krupa, and Lynn Krupa, appeal the judgment of the circuit court of Du Page County dismissing their claims against defendants, Jones & Brown Co., Inc., and its directors and officers, including its president, Ronald A. Krupa (Krupa). Plaintiffs' complaint alleges that they were swindled by Krupa, who presented an investment opportunity to them but then failed to return their money at the end of the contractual investment period. We reverse and remand.

The following are the material allegations of plaintiffs' complaint:

(A) Krupa was at all relevant times president of Jones & Brown and a member of its board of directors;

(B) Jones & Brown outfitted Krupa with an office, phone, and company letterhead to perform his duties;

(C) Krupa, acting "in his capacity as [Jones & Brown's] President" and as the "agent or apparent agent" of Jones & Brown and its board of directors, represented to plaintiffs that "he was authorized to take [plaintiffs' money] and invest it in his name in the investment fund at [Jones & Brown]" called the "Scudder Fund," which was "open to high ranking executives of [Jones & Brown], such as himself, for such investing for himself and for others, including his friends and family, in his name, and was backed by the full faith and financial strength of [Jones & Brown] and its insurers";

(D) Krupa, acting "in his capacity as [Jones & Brown's] President" and as the "agent or apparent agent" of Jones & Brown and its board of directors, represented to plaintiffs "on multiple occasions" that they "could avail [themselves] of [Jones & Brown's] investment fund" and "that he had invested money from other friends and family of his in like fashion, that other directors and officers of [Jones & Brown] made like investments of their friends' and families' money in [Jones & Brown's] investment fund, that making such investment of directors' and officers' own money as well as that of their friends and family was a perk available only to [Jones & Brown's] directors and officers, and that [Jones & Brown] encouraged its directors and officers to invest their friends' and families' money in the fund";

(E) Krupa, acting "in his capacity as [Jones & Brown's] President" and as the "agent or apparent agent" of Jones & Brown and its board of directors, "had previously made such representations to [plaintiffs], had entered into prior contracts with [them] for investment of

[their] money in the investment fund at [Jones & Brown], and had repaid to [them] such investments with interest"; and

(F) Plaintiffs, based on their prior experiences, "continued to rely on the representations [Krupa] made to [them] ***, due to his long-standing employment with [Jones & Brown] of more than 20 years and [their] knowledge that he was president of [Jones & Brown] and enjoyed a variety of perks due to his position and regarding his ability to invest [their] money in [Jones & Brown's] investment fund, his guarantee on behalf of himself and [Jones & Brown] that [their] investment would be repaid in full with interest, and his capacity as President of [Jones & Brown] in making such representations."

Plaintiffs attached to their complaint two agreements handwritten on Jones & Brown letterhead. The first agreement, dated December 28, 2002, reads:

"This letter shall act as the basis of the following agreement between Jacqueline Zahl and Ron Krupa.

Effective 1-1-03, I[,] Ron Krupa (President of Jones and Brown)[,] agrees [sic] to invest $160,000 of Jacqueline Zahl's money into a [sic] investment fund at Jones and Brown.

This is a Scudder Fund only available to members of Jones & Brown's board of directors. The investment will be for a period of seven months yielding a guarantee [sic] net rate of return in the amount of 11.1%.

Thus, Jacqueline's investment [of] $160,000 cash effective 1-1-03 at 11.1% thru 7-31-03 equals a full investment return of $177,760 less processing fees.

Jones and Brown fully guarantees this investment."

The note is signed by Krupa and plaintiff Jacqueline Zahn.

The second note is dated May 31, 2003, and provides:

"I[,] Ron Krupa[,] President of Jones and Brown[,] agrees [sic] to invest $100,000 of Gene and Lynn Krupa's money at a rate of 11.1% for a period of 10 months. Thru a Scudder investment fund available only to Jones and Brown['s] Board of Directors.

The net return available 4-01-04 will be $111,100 less processing fees. This money is guaranteed by Jones and Brown."

The note is signed by Krupa and plaintiffs Gene Krupa and Lynn Krupa.

Plaintiffs alleged that, when the contractual investment period was over, they asked Krupa to return their money with the contractual interest. Krupa told them that there was no Scudder investment fund at Jones & Brown[1] and that he had lost all of their money through investing in the stock market. Krupa later told plaintiffs that he lost their money through gambling.

---

[1]Whether the Scudder fund ever existed is not indicated in the pleadings. As we must take all well-pleaded facts as true for our purposes here (Northern Trust Co. v. County of Lake, 353 Ill. App. 3d 268, 278 (2004)), we assume as true plaintiffs' allegation that they believed the Scudder fund existed at the time they agreed to invest.

Plaintiffs brought causes of action against defendants for breach of contract (premised on actual and/or apparent authority), fraud (premised on actual and/or apparent authority), negligent hiring, negligent supervision, and negligent retention.[2]

Defendants moved to dismiss the claims under section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2004)). Defendants argued that plaintiffs' claims were barred by the doctrine of unclean hands because, according to the written agreements attached to plaintiffs' complaint, the Scudder fund was available only to members of Jones & Brown's board of directors. Defendants reasoned that plaintiffs cannot claim wrongdoing with respect to agreements that Jones & Brown's policies did not allow them to make in the first place. Defendants argued in the alternative that plaintiffs failed to plead facts showing that Krupa acted as the actual or apparent agent of defendants in depriving plaintiffs of their money. The trial court accepted both arguments. The court found that plaintiffs' claims were defeated by the doctrine of unclean hands because the written contracts signed by plaintiffs and Krupa recite that the Scudder fund was available only to members of Jones & Brown's board of directors, a criterion that plaintiffs admittedly did not meet. The court further found that plaintiffs' allegations of actual or apparent authority were inadequately

---

[2]The complaint also contains claims against Krupa individually. These claims are not the subject of this appeal.

pleaded, resting entirely on the allegation that Jones & Brown and its board of directors "provided Mr. Krupa with an office, a telephone, and letterhead."  The court also noted that the written agreements contain no indication that Krupa was acting on behalf of defendants when he signed them.  The court dismissed plaintiffs' claims against defendants, and plaintiffs filed this timely appeal.

Although styled as a motion brought under section 2--619, defendants' motion actually combines features of a section 2--619 motion and a motion under section 2--615 of the Code (735 ILCS 5/2--615 (West 2004)).  Section 2--619.1 of the Code (735 ILCS 5/2--619.1 (West 2004)) permits such combined motions.  Sections 2--615 and 2--619 allow for dismissal under different legal theories.  Van Duyn v. Smith, 173 Ill. App. 3d 523, 528 (1988).  A section 2--615 motion attacks the legal sufficiency of the plaintiff's claims, while a section 2--619 motion admits the legal sufficiency of the claims but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeat the action.  Northern Trust Co. v. County of Lake, 353 Ill. App. 3d 268, 278 (2004).  In arguing that plaintiffs failed to establish that Krupa acted with actual or apparent authority, defendants attack the legal sufficiency of plaintiffs' claims.  See Malanowski v. Jabamoni, 293 Ill. App. 3d 720, 726-27 (1997) (setting forth elements of cause of action based on apparent agency).  In asserting that plaintiffs have unclean hands, however, defendants admit the legal sufficiency of plaintiffs' claims but raise an affirmative defense.  See Long v. Kemper Life Insurance Co., 196 Ill. App. 3d 216, 218-19 (1990) (unclean hands is an affirmative defense).

The question presented on review of a motion to dismiss pursuant to section 2--615 is whether the complaint contains sufficient facts that, if established, would entitle the plaintiff to relief.  Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 488 (1994).  Where a claim has been

dismissed pursuant to section 2--619, however, the question is whether there is a genuine issue of material fact and whether the defendant is entitled to judgment as a matter of law. Illinois Graphics Co., 159 Ill. 2d at 494. When reviewing a trial court's disposition of a motion to dismiss filed under either section 2--615 or section 2--619, the reviewing court accepts all well-pleaded facts as true and makes all reasonable inferences therefrom. Northern Trust Co., 353 Ill. App. 3d at 278. A dismissal under either section 2--615 or section 2--619 is reviewed de novo. Chicago Motor Club v. Robinson, 316 Ill. App. 3d 1163, 1171 (2000).

Plaintiffs' first argument is that the trial court erred in finding that their claims are defeated by the doctrine of unclean hands. We agree. The doctrine of unclean hands applies if a party seeking equitable relief is guilty of misconduct, fraud, or bad faith toward the party against whom relief is sought and if that misconduct is connected with the transaction at issue in the litigation. Long, 196 Ill. App. 3d at 219. Though the parties do not recognize it, the unclean hands doctrine bars only equitable remedies and does not affect legal rights. American National Bank & Trust Co. of Chicago v. Levy, 83 Ill. App. 3d 933, 936 (1980); 30A C.J.S. Equity §111, at 324 (1992) (doctrine of unclean hands "does not deny legal rights"). Plaintiffs seek not equitable relief but the legal remedy of money damages, i.e., their initial investment together with the contractual rate of interest. See John O. Schofield, Inc. v. Nikkel, 314 Ill. App. 3d 771, 786-87 (2000) (distinguishing between money damages and equitable remedy of specific performance).

However, even if the doctrine were applicable here, we would still find that dismissal based on that doctrine was improper. In seeking dismissal on the basis of the unclean hands doctrine, defendants relied specifically on subsection (a)(9) of section 2--619 of the Code (735 ILCS 5/2--619(a)(9) (West 2004)), which provides for dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." Our review

requires us to examine whether defendants have adduced an "affirmative matter" that defeats plaintiffs' claim.

> " 'Affirmative matter,' for purposes of avoiding the effect or of defeating the claim, is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. [Citation.] It must, however, be something more than evidence offered to refute a well-pleaded fact in the complaint, for, as in the case of a motion under section 2--615 [citation], such well-pleaded facts must be taken as true for the purposes of a motion to dismiss under section 2-- 619(a)(9) [citation]." Heller Equity Capital Corp. v. Clem Environmental Corp., 232 Ill. App. 3d 173, 178 (1992).

The trial court held, and defendants now argue, that plaintiffs' bad faith in attempting to invest in the Scudder fund is established by the statements in the written agreements that the fund was open only to members of Jones & Brown's board of directors. We disagree. These statements admit of two different interpretations, both of them plausible. On defendants' reading, the statements are entirely exclusive, limiting the Scudder fund strictly to the monies of Jones & Brown's directors. On another reading, however, the statements identify Jones & Brown's directors as the company's sole conduits for investing in the Scudder fund but place no limits on whose money the directors may invest. The latter reading is entirely consistent with plaintiffs' allegations that Krupa told them that the Scudder fund was available not just to Jones & Brown's officers and directors but to their friends and families as well, and that, based on Krupa's representations, they previously gave him funds for investing in the Scudder fund and received what Krupa promised them. Therefore, we cannot say that the written agreements defeat plaintiffs' claims. We hold that the trial court erred in dismissing plaintiffs' claims as barred by the doctrine of unclean hands.

We turn to the other grounds for dismissal relied on by the trial court and now argued by defendants. Plaintiffs dispute the trial court's finding that Krupa signed the investment agreements solely in his individual capacity and that he therefore bound himself alone. Defendants respond by observing that Krupa's signature was not accompanied by a designation of himself as a corporate officer. For support, defendants cite 84 Lumber Co. v. Denni Construction Co., 212 Ill. App. 3d 441 (1991). In 84 Lumber, the officers of a construction company signed an application for credit from a lumber supplier. Although the name of the construction company was indicated in the section entitled "company name," both officers signed their names in their individual capacities on the "applicant" lines. Additionally, one of the officers signed his name on the signature line for "principal." The contract specified that the " 'applicant agrees that he will be personally responsible.' " 84 Lumber Co., 212 Ill. App. 3d at 443. The appellate court held that parol evidence was not admissible to show the intent of the parties because the officers unambiguously assumed personal liability under the contract:

"Here, [the officers] signed, not in their corporate capacity, but individually. An officer who signs his name, without more, is individually liable on the contract. [Citation.]" 84 Lumber Co., 212 Ill. App. 3d at 443.

84 Lumber is distinguishable. The agreements in the present case do not unequivocally reflect an intent to bind Krupa individually. Although, like the signatures in 84 Lumber, Krupa's signature is not accompanied by a designation of himself as a corporate officer, the manner of signature is not dispositive. "Where language in the document conflicts with the apparent representation by the officer's signature, an issue of fact is created." Sullivan v. Cox, 78 F.3d 322, 326 (7th Cir. 1996), citing Knightsbridge Realty Partners, Ltd-75 v. Pace, 101 Ill. App. 3d 49, 53 (1981). The agreements recite that the investments are guaranteed by Jones & Brown, which

contradicts what is implied in the manner of Krupa's signature. We conclude, therefore, that there is an issue of fact regarding whether the parties intended to bind Krupa individually. The trial court, therefore, should not have granted dismissal based on the language of the agreements.

Next, we address plaintiffs' allegations that Krupa acted with either the actual or the apparent authority of defendants in signing the agreements on behalf of Jones & Brown. We must determine whether the complaint alleges facts that, if proven, would entitle plaintiffs to relief from defendants under a theory of agency. Illinois Graphics Co., 159 Ill. 2d at 488. An agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf. Kaporovskiy v. Grecian Delight Foods, Inc., 338 Ill. App. 3d 206, 210 (2003). An agent's authority may be either actual or apparent, and actual authority may be either express or implied. Kaporovskiy, 338 Ill. App. 3d at 210. An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act. Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc., 326 Ill. App. 3d 126, 135 (2001). Implied authority is actual authority proved by circumstantial evidence or authority that is inherent in an agent's position. Amcore Bank, 326 Ill. App. 3d at 137. Apparent authority, by contrast, arises when the principal holds an agent out as possessing the authority to act on its behalf, and a reasonably prudent person, exercising diligence and discretion, would naturally assume the agent to have this authority in light of the principal's conduct. Letsos v. Century 21-New West Realty, 285 Ill. App. 3d 1056, 1065 (1996). Only the words and conduct of the alleged principal, not those of the alleged agent, establish the agent's authority, whether actual or apparent. Kaporovskiy, 338 Ill. App. 3d at 210. Where, as here, a corporation is the alleged principal, it must be remembered that a corporation is a legal entity that acts only through persons--e.g., its officers and directors. See American Family Mutual Insurance Co. v. Enright, 334 Ill. App. 3d 1026, 1036 (2002); First Chicago v. Industrial Comm'n,

294 Ill. App. 3d 685, 691 (1998). As Krupa is an officer of Jones & Brown, plaintiffs were entitled to consider his words and conduct as those of Jones & Brown itself where it was reasonable to do so. See First Chicago, 294 Ill. App. 3d at 691 (officer had authority to bind corporation in signing appeal bond). The existence and scope of an agency relationship are usually questions of fact to be decided by the trier of fact, unless the parties' relationship is so clear as to be undisputed. Pyskaty v. Oyama, 266 Ill. App. 3d 801, 826 (1994).

Plaintiffs argue that Krupa had authority to accept funds on behalf of defendants for investment in the Scudder fund because (1) Krupa was president of Jones & Brown, had enjoyed that position for 20 years, and was given an office, telephone, and company letterhead for the execution of his duties; (2) Krupa told plaintiffs that Jones & Brown not only allowed but encouraged friends and family of Jones & Brown's officers and directors to invest in the Scudder fund; (3) Krupa had previously taken plaintiffs' money for investing in the Scudder fund with a guaranteed rate of return, and Krupa returned the money with the interest promised; and (4) the investment agreements at issue were written on company letterhead. Notably, plaintiffs do not argue that defendants gave Krupa express authority to accept money on their behalf for investment in the Scudder fund but, rather, contend that Krupa's authority was implied in his position as president of Jones & Brown and was also apparent from plaintiffs' prior course of dealing with defendants and from their providing Krupa with various accouterments of office.

For authority, plaintiffs rely principally on Denten v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 887 F. Supp. 176 (N.D. Ill. 1995), a case applying Illinois's law of agency. The plaintiff in Denten sued Merrill Lynch for the misconduct of one its brokers, Webster. The plaintiff alleged in her complaint that Webster had been a broker and employee of Merrill Lynch for 20 years when the plaintiff decided to have him handle her investment account. The plaintiff chose Webster based on

her father's positive experiences with him during his long-standing relationship with Merrill Lynch. The plaintiff alleged that, after she became Webster's client, he regularly contacted her regarding investment strategy. He phoned her from his office in Merrill Lynch's building, had meetings with her in that office, and sent her letters that were printed on Merrill Lynch's letterhead and enclosed in envelopes bearing Merrill Lynch's name and address. The plaintiff further alleged that one of the investment opportunities Webster presented to her involved a radio station. Webster persuaded the plaintiff to give him funds to invest for her in the radio station, but Webster used the money to purchase his own share in the station. The plaintiff alleged that Merrill Lynch was liable for Webster's misconduct on a theory of apparent agency. Denten, 887 F. Supp. at 177-78. The trial court found that the plaintiff had pleaded facts establishing that Webster acted with the apparent authority of Merrill Lynch in taking her money for investment in the radio station:

"First, according to the allegations, Merrill Lynch employed Webster as an Executive Vice President. For twenty years, Merrill Lynch furnished Webster with a large office, telephone number and Merrill Lynch letterhead. These allegations support the fact that Merrill Lynch created the impression that Webster had authority from Merrill Lynch to act as he did.

Additionally, the allegations support plaintiff's reasonable belief that Webster had the authority from Merrill Lynch. Plaintiff alleged that part of her decision to become a client with Merrill Lynch was the relationship her family enjoyed with the company through Webster who was their personal representative, advisor and financial consultant. Plaintiff also alleges that Webster reminded plaintiff of Merrill Lynch's reputation and his twenty years of experience with Merrill Lynch to persuade her to become a client of Merrill Lynch."
 Denten, 887 F. Supp. at 179.

While <u>Denten</u>, being a federal case, is not binding on this court (<u>Tri-G, Inc. v. Burke, Bosselman & Weaver</u>, 353 Ill. App. 3d 197, 213 (2004)), we find its reasoning persuasive. The actions alleged of defendants are similar to the actions alleged of Merrill Lynch in <u>Denten</u> to prove apparent authority. The plaintiff in that case alleged that Merrill Lynch held out Webster as its agent by employing him for 20 years and by outfitting him with an office, phone, and company letterhead. Here, plaintiffs have similarly pleaded that Jones & Brown employed Krupa for at least 20 years and supplied him with an office, phone, and company letterhead. The plaintiff in <u>Denten</u> alleged that her decision to use Merrill Lynch and, particularly, Webster for investment advice was based on her father's relationship of many years with Merrill Lynch. Plaintiffs pleaded analogous facts here, alleging that their decision to invest in the Scudder fund was based on their past successes in investing in the fund through Krupa. Moreover, "a reasonable person would assume that a corporate officer has the authority to bind the corporation financially because decisions relating to a corporation's financial obligations are typically reserved for corporation officers and directors" (<u>First Chicago</u>, 294 Ill. App. 3d at 691). Based on <u>Denten</u> and the principles of <u>First Chicago</u>, we hold that plaintiffs have pleaded facts that, if true, would prove that Krupa acted with the apparent authority of defendants in taking plaintiffs' money pursuant to the investment agreements.

Defendants argue that <u>Denten</u> is inapposite because Jones & Brown "is not engaged in the business of selling investment opportunities to third parties as was the defendant in <u>Denten</u>." Rather, defendants assert, they are in the construction business. Plaintiffs' complaint contains no allegations about Jones & Brown's actual business, but such allegations were not necessary to establish apparent authority. The question is not whether Jones & Brown's course of business includes the selling of investment opportunities but whether plaintiffs reasonably believed that Jones & Brown permitted outside parties to invest in a Scudder fund available to its directors. Plaintiffs allege that they did so

reasonably believe. Whether plaintiffs can prove their allegations if defendants prove that Jones & Brown is in a business totally unrelated to investment opportunities remains to be seen.

Defendants also argue that plaintiffs failed to exercise due prudence and should have avoided the agreements Krupa proposed because of certain suspicious aspects, namely: (1) the investment agreements were handwritten by Krupa and signed by him in his individual capacity; (2) Krupa told plaintiffs that the funds were to be invested in his name rather than in plaintiffs' names; and (3) Krupa told plaintiffs that the funds were to be given to him, in cash, and not to Jones & Brown. As for the issue of Krupa's signature, we reiterate that the agreements contained sufficient indicia that Krupa signed them in his capacity as president of Jones & Brown. As for the method by which Krupa was to receive and invest the funds, we cannot say as a matter of law that these aspects were so patently suspicious that plaintiffs could not reasonably proceed with the proposed deal. Rather, these aspects are but a few of the circumstances that bear upon whether apparent authority existed here, and such a question is generally one of fact. Pyskaty, 266 Ill. App. 3d at 826.

We note that, though defendants moved for dismissal of all claims against them, the trial court focused its analysis on the contract and fraud counts and did not specifically address plaintiffs' claims for negligent hiring, negligent supervision, and negligent retention. Presumably, the trial court considered such analysis superfluous in light of its acceptance of the defense of unclean hands, which was relevant to all counts--contract, fraud, and negligence alike. However, we have found that the pleadings and supporting documents do not establish the defense of unclean hands. While we may affirm the judgment of the trial court on any basis in the record (Tri-G, 353 Ill. App. at 214), defendants present no alternative basis for affirming the dismissal of the negligence claims but instead rely entirely on the defense of unclean hands. Accordingly, we reverse the dismissal of all claims against defendants.

For the foregoing reasons, we reverse the judgment of the circuit court dismissing plaintiffs' claims against defendants, and we remand the cause.

Reversed and remanded.

BOWMAN and CALLUM, JJ., concur.